JACKSON, <em>ex. dem.</em> WILLIAM GILLILAND and others, <em>against</em> WOODRUFF and DOTY.

*In ejectment, the defence of 20 years possession, in order to countervail a legal title, must be supported by 20 years actual occupancy, or a substantial enclosure of the premises by the defendant, or by him and those through whom he derives title.*

*A cultivation of part of the premises, with a claim of title to the whole for that time, will not constitute a defence beyond the portion actually improved.*

*And even where such*

EJECTMENT, for *one acre of land,* at *Salmon River,* in *Plattsburgh, Clinton county,* called the *Fairman lot,* and for *one half acre of land* adjoining the same, on the north ; tried before his honour Mr. Justice WOODWORTH, at the *Clinton* Circuit, *June,* 1821.

The suit was commenced in *May* term, 1818, the defendants then being in possession. The plaintiff, in deducing his title, shewed, 1. Letters patent, under the colonial government of *New-York,* to *John Friswell,* dated *May* 7, 1765, for a tract of land called *Friswell's Patent,* which included the premises in question. 2. A deed of conveyance, in fee, of that patent, from *Friswell,* the patentee, to *William Gilliland,* the father of *William Gilliland,* the lessor of the plaintiff. This deed was dated the *7th August,* 1765. *William Gilliland,* the father, died after our statute of descents, leaving *William Gilliland,* the son, and lessor of the plaintiff, *Jane,* his daughter, wife of *John Bleecker,* and two other daughters, his heirs at law : so that one fourth descended to *William Gilliland,* the son, under whose demise the plaintiff claimed, in this suit, the *one fourth* of the premises in question. In 1787, *John Bleecker,* before

mentioned, who was a surveyor, and then the brother-in law of *Gilliland*, the lessor, by his intermarriage with *Jane*, (*G.'s* sister) claimed title to, and run the out-line of *Friswell's Patent*. But, by a mistake of the boundaries, he contracted the out-line, on the side *north* and *west*, next adjoining to the *Plattsburgh Patent*, which was there bounded upon *Friswell's*, so as to leave the premises in question, with a large tract of land besides, to be taken by the *Plattsburgh Patent*. *Gilliland*, the lessor of the plaintiff, supposing this survey correct, spoke of it as being so, and sold a farm to one *John Brown*, and gave him a deed of conveyance, in 1798, and directed him to take possession under it, according to *Bleecker's* out-line, on the side of the *Plattsburgh Patent*; and *Brown* had located and improved his land accordingly, to the time of the trial. *William Brown*, his brother, purchased and held in the same manner, a farm adjoining to and lying on the south of *John's* farm. *Gilliland* directed both him and his brother to locate according to *Bleecker's* survey.

*Plattsburgh Patent*, granted in 1784, was, *in terms*, bounded upon the *north* and *west* lines of *Friswell's*; and shortly

possession is under a deed, or paper title, for a large tract of land, (*e. g.* 783 *acres*) and only a small part is improved, (*e. g.* 2 *acres*) with a claim of title to the whole, this will not constitute an adverse possession, beyond the actual improvement.

Where A owned a patent, and B owned another patent adjoining; and, in the location

under their respective patents, A, by a mistake in locating, curtailed his patent, on the side of B, in consequence of which B, though he located, at first, on the true line, afterwards claimed up to A's location, and deeded a supposed gore between the patents; *held*, that A was not concluded in an action of ejectment, but might recover against one claiming a part of the supposed gore under the title of B.

And, though A actually give conveyances of his land, according to such mistaken location, he will not be concluded in relation to any persons other than those to whom he has thus conveyed.

And where one takes a deed, purporting to describe a tract of land; but which, by a mistake in the description, covers nothing; and the grantee, by occupation, takes possession of a part, and claims title to the whole of the supposed tract, under the deed, this is an adverse possession only as to the part actually improved.

And, accordingly, in *Jackson* v. *Loyd*, (*M. S. Oct. Term*, 1820) where the defendant had a deed for lot 4, but took possession of lot 5, adjoining, believing it to be lot 4, and claiming it as such, and improving a part; *held*, that his adverse possession did not extend beyond his actual improvements.

The doctrine of the constructive adverse possession of lands, by the cultivation of part, accompanied by a claim of the whole, under a deed, does not apply to large tracts of land, not purchased for the purpose of actual cultivation.

This doctrine is, in general, applicable to a single farm or lot of land, only, purchased for the purpose of actual cultivation.

The reason and propriety of this distinction, very fully considered.

A rightful title is not necessary to constitute an adverse possession.

A constructive adverse possession, must be founded on a deed, or paper title, though such title need not be a rightful one.

before *Bleecker's* survey, the proprietors of the former had located in relation to *Friswell's Patent*, so as to leave a considerable gore between their patent and *Friswell's*, as located by *Bleecker*. They had surveyed and laid out their patent into lots, corresponding nearly with the *north* and *west* line of *Friswell's Patent*, as afterwards discovered, and now claimed by the plaintiff. They had given conveyances for several of their lots, which were uniformly described as bounding on *Friswell's Patent ;* and done other acts recognizing the true *north* and *west* lines of this patent. *Friswell's Patent* was bounded south by *Stewart's Patent*, which bore the same date with *Friswell's.*

The defendants, besides insisting that *Gilliland* had concluded himself, by his recognition of *Bleecker's* survey, relied upon an adverse possession of 20 years, in bar of the plaintiff's claim. For this purpose, they gave in evidence a quit claim deed, from *Zephaniah Platt* to *Nathaniel Platt*, dated *Sept.* 6, 1794, which purported to convey land between the lotted lands of *Plattsburgh Patent* and *Friswell's Patent*, and referred, for that purpose, to certain boundaries of the patents. But, as the lotted lands of *Plattsburgh* were all bounded on *Friswell*, it, *in fact*, included no land. But, had *Bleecker's* survey been correct, and the lots in *Plattsburgh* had not been bounded on *Friswell*, it would have included a large tract of land of about 783 acres, which intervenes between that survey and the *Plattsburgh Patent*, as originally allotted. Of this large tract, the premises in question are a part. Under this deed, one *Cochran*, who was employed by the grantee, *N. Platt*, made the first improvement, in 1794. And the occupation and improvements of *Salmon River Village*, also included in the deed, together with the premises in question, commenced and continued under *N. Platt*, down to the present defendants.

In 1797, there was a clearing, of about 2 acres, upon this tract, in a place now called the *Salmon River Village*, and a small clearing in another part, to what extent did not appear. But the *Fairman place*, (part of the *locus in quo*) was not cleared till 1799, and the *half acre*, on the north, the other part of the *locus in quo*, not till two or three years afterwards.

The whole tract of 783 acres, was claimed by *N. Platt* and one *Moses Soper*, while it was in woods.

A short time before the trial, *Friswell's Patent* had been carefully surveyed, by *William Keese;* by whose survey it was clearly ascertained, that the premises in question lie within the true bounds of that patent. *Keese*, on his examination, as a witness, said he had heard *Gilliland*, the lessor of the plaintiff, say something about holding under *Bleecker*.

The more minute details of evidence, presented by the case, are fully stated by the Judges, in delivering their opinions. It is therefore not necessary to notice them here.

A verdict was taken for the plaintiff, subject to the opinion of the Court upon a case, with liberty to turn the same into a bill of exceptions, or special verdict.

The points submitted, were,

1. Whether the deed from Z. *Platt*, and the possession taken under it, bars the plaintiff's right of entry.

2. Whether the location of *Friswell*, by *Bleecker*, in 1787, and the recognition thereof by *Gilliland*, the lessor of the plaintiff, in directing *Brown*, by what line he should be governed, is a conclusive establishment of the line where *Bleecker* run it.

*S. A. Foot*, for the plaintiff. The title as deduced to the heirs of *Gilliland*, the father, is not contested. The paper title under which the defendants claim, viz. the deed from Z. to *N. Platt*, includes no land whatever, nor has there been any location under it. There has been no fence erected, nor even a line run around its supposed contents. There was merely a small clearing of about two acres ; and at what time this took place, does not appear from the case. It is true that this possession, such as it was, has been continued down to the present time ; but in this case, the adverse possession, if it can be called so, cannot be extended beyond the actual occupancy. Actual adverse possession was formerly held necessary, in all cases ; but now, where the party has a deed, for a specifick piece of land, distinctly described and bounded, an entry into, and possession of part, extends, by construction, to the whole. Yet this rule never

UTICA,
August, 1823.

JACKSO
v.
WOODRUFF.

contemplated a deed, where the description includes noth-ing, and where the party claiming under it has never defined its contents, even by running the out-line. This is not such a distinct designation of a piece of ground, a part of which the grantee takes possession of, as to constitute an adverse possession for one inch beyond the land actually improved. The operation of an adverse possession is founded upon its notoriety to all the world, and especially to the true owner of the soil. Here, from its very nature, it can carry no no-tice to any one.

Are *Gilliland's* heirs concluded by *Bleecker's* survey ? There is no doubt that this line was a mistaken one ; and that *Gilliland*, the lessor of the plaintiff, at the time he deeded to the *Browns*, supposed it to be correct. Indeed, this line is fully recognized in the deed which he executed. But this was a concession in ignorance of his rights ; and is, therefore, not binding. This is, in reason, clearly distinguish-able from an agreement fixing boundaries. The class of ca-ses which recognize the validity of such an agreement, re-fer to disputes about the lines of adjoining lots, under mu-tual adverse claims, where the parties, for the sake of their own peace, and that of the neighbourhood, settle the bounda-ry line between them.(a) Here, on the other hand, is a mere mistake in location ; and, at most, it can not be ex-tended beyond the immediate land of the *Browns*. It can never affect claims to other and *distinct* lands. The claim set up, by the defendants, is founded on a supposed gore, and not upon the faith of any thing which *Gilliland* and the *Browns* have done.

*Z. R. Shipherd*, contra. The case presents *Bleecker*, who married one of the heirs of *Wm. Gilliland*, senior, in the de-liberate act of surveying and locating the patent of *Friswell*, in which he was interested, and making it of a less extent than he might have exacted. *Z. Platt* was then justified in sup-posing the survey a correct one ; and he, thereupon, extends his own patent. Under the idea that he was the proprietor,

(a) Vid. *Jackson* v. *Dysling*, (2 *Caines*, 198.) *Burrell* v. *Burrell*, (11 *Mass. Rep.* 294.)

he takes possession of the gore. He does this under the deed of 1794, by which he intended to grant to *N. Platt* all the land between the old line of his own patent, and the line of *Friswell's Patent*, as established by *Bleecker's* survey. *N. Platt* takes possession, accordingly, under the grant to him, to be regulated, in its extent, by the intervening space. I shall not contend that, if *Bleecker's* survey was a *mistaken one*, it can, as such, bind either him or *W. Gilliland*, who locates the *Browns* under it. Yet, even allowing it to be a mistaken survey ; so far as an actual adverse possession has been produced by it, for 20 years, it is available as a defence. The cases of agreements, between adjoining owners, will also apply : for here were mutual adverse claims, distinctly known and understood by the parties. The lines of the deed from *Z*. to *N. Platt* are distinct. The boundaries are on the *Plattsburgh* and *Friswell Patents*, the latter of which had been located by *Bleecker's* survey. This survey, when the deed was drawn, gave, as was supposed by both parties, the true lines of *Friswell Patent ;* and it must be construed, in reference to the lines of that patent, as designated by *Bleecker*. The clearing, under that deed, commenced in 1794. It has progressed to the present time, accompanied by a claim co-extensive with the gore. Here, then, are acts of ownership, carried on under an actual grant, of sufficient notoriety to operate as notice to the lessors of the plaintiff.

But the pretence of ignorance and mistake, on the part of *Bleecker & Gilliland*, is unfounded, and they must be concluded by their acts. Every principle which conspires to conclude parties, by an agreement fixing boundaries, applies here. If *Bleecker* did not know his rights, he had every requisite means of knowledge, which is the same thing. Being a surveyor, he was enabled fully to avail himself of those means. Each party stands upon the same ground, as to mistake. It may be on the part of *Bleecker*—it may be on the part of *Platt :* for nothing appears establishing the superior correctness of *Keese's* survey. Neither he nor *Bleecker* agree with *Platt*. *Gilliland* recognizes the *Bleecker* line—

all the lessors of the plaintiff acquiesce, for 20 years, and ought to be concluded.

*Oakley,* in reply.   There is no doubt that the premises in question are included in *Friswell's Patent ;* and the main inquiry is, whether *Gilliland's* acts are to conclude the plaintiff?   These acts are, certainly, nothing more than evidence where the line is ; and, as such, it is to go amongst other evidence to the jury   It is not conclusive, like an agreement to settle disputed boundaries.   And, besides, *Friswell's* true line has been as distinctly recognized by *Platt,* and the proprietors of *Plattsburgh Patent,* as *Bleecker's* line by *Gilliland.*   The location and laying down lots, in the *Plattsburgh Patent,* was upon the supposition that *Friswell's* included the gore.   This brings us back to the question—Where is the true line ?

*Bleecker's* survey was a mere mistake, and *Gilliland's* recognition is equally so.   Is there here, then, a constructive adverse possession, within the legal meaning of the phrase ?   Often as the Court have passed upon questions of this kind, there is yet great difficulty in applying their doctrine to the various new cases continually occurring.   It is settled, that, to make out an *actual* adverse possession, where there is no deed, the party must bound himself by substantial enclosures. (*Jackson* v. *Schoonmaker,* 2 *John.* 230, 234.)   The possession must, in such case, be marked by definite boundaries. (*Brandt* v. *Ogden,* 1 *John.* 156, 158.   *Doe* v. *Campbell,* 11 *John.* 475.   Vid. also, 13 *John.* 368.)   True, the Court have gone farther.   They have decided, that, where the party enters and improves part, claiming the whole, under a definite description in a deed of conveyance, the possession is adverse as to the whole.(*b*)   But there is, at least, great uncertainty, whether the description, in the deed to *Platt,* embraces the *locus in quo.*   Suppose the claim, under this deed, had been extended to the whole patent.   Might not this have been as well done, as the claim which was made,

(*b*)  Vid. *Jackson* v. *Bowen,* (1 *Caines,* 358.)   Vid. also, what the Court say in *Jackson* v. *Elston,* (12 *John.* 454 ;) and 2 *Serg.* & *Rawle,* 439.

of 7 or 800 acres ? The doctrine of adverse possession must be qualified, and limited to lands sold for actual cultivation ; else the improvement of an acre, or other trifling quantity of land, may be indefinitely extended to large tracts of unimproved lands. But if you construe the *Platt* deed according to the fact, it will be limited to the true line of *Friswell's Patent.* The deed, then, includes nothing ; and the party must be confined to his actual possession.

WOODWORTH, J. The premises in question are included within the bounds of a patent granted in 1765, to *John Friswell.* *William Gilliland,* one of the lessors, deduced a title, under *Friswell,* to one fourth part. It was contended, on behalf of the defendants, that, in 1787, *John Bleecker,* who claimed *Stewart's* and *Friswell's Patents,* ran the out-lines, and that his survey did not include the premises ; that *Gilliland* had recognized the line of *Bleecker,* and held under him, and was, therefore, concluded by it. *Cochran,* who accompanied *Bleecker* in the survey, says the lines would not include the defendants' possession. That *Bleecker* made a mistake in tracing the lines, and that the patent extended considerably farther west and north, is proved, not only by the acts of the proprietors of *Plattsburgh Patent,* in laying out their lands, which are bounded on *Friswell,* but, also, by the recent survey of *Keese,* which was not controverted at the trial. Admitting *Bleecker* to have been the proprietor, the defendants cannot avail themselves of the mistake. The evidence of *Gilliland's* holding under *Bleecker,* is very loose and unsatisfactory. *Keese,* the only witness who testified as to that fact, says that he heard *Gilliland* say something about holding under him. In 1799, *Wm. Brown* applied to purchase. *Gilliland* agreed to let him have a farm next south of *John Brown's,* who was to have one adjoining the north line of *Friswell's Patent.* *Gilliland* stated, that *Bleecker* had run out the patents ; that they would find his north line ; and directed the farms to be laid out accordingly. They did so, and have occupied and improved, according to the *Bleecker* line, to the present time. It is evident, *Gilliland* intended to bound the farm of *Brown* on the true north line ; for to

that he refers. As *Bleecker* had surveyed the out-lines, there does not appear to have been, at that time, any cause for doubting its correctness. He, accordingly, directed *Brown* to be governed by it. If it be conceded that *Gilliland* held under *Bleecker*, upon what principle can strangers, without title, and holding adversely, be permitted to avail themselves of a manifest mistake, or derive benefit from acts done by the plaintiff, under a misapprehension of his right? The line was not run to quiet adjoining possessions—the defendants' possession commenced long after. Neither was it run to settle the line between *Friswell* and *Plattsburgh*. It is true, the proprietors of the latter patent were bounded on the former; but they had, previous to *Bleecker's* survey, ascertained the true line, (which corresponds with the one set up by the plaintiff) and located and divided their patent. The unfounded claim, of a gore between the two patents, was set up long after, and not until 1794. It was then asserted with caution, and conveyed by a quit-claim deed. In whatever point of view the survey of *Bleecker* and the acts of *Gilliland* are considered, they interpose no barrier against the plaintiff's title.

The remaining question is—have the defendants made out an adverse possession? The actual occupation of the premises, by the defendants, is less than twenty years, as appears by the testimony of *Winchell*. He says that *Moses Soper* had cleared about two acres, not including the premises, at *Salmon River Village*, in 1797; that he, and *Nathaniel Platt*, claimed the whole property, while it was in woods. The validity of this claim will next be considered.

In *September*, 1794, Z. *Platt* executed a quit-claim deed to *Nathaniel Platt*, for 783 acres of land, purporting to convey, thereby, lands lying between the east and south lines of allotted lands in *Plattsburgh*, and the line of *Friswell's Patent*. On examining the boundaries, and the map annexed to the case, it will be found not to include any land; for there is no gore between the two patents. The description follows: "Beginning at the distance of 7 chains, 8 links, north from the south east corner of lot No. 99, in the second division of *Plattsburgh*; thence east, 27 chains and 50

links, to *John Friswell's* patent." Now, as it has been shewn, that *Friswell's Patent* joins on *Plattsburgh*, the line cannot be extended easterly. If it was so extended, it would run on lands included in that patent, which is not admissible, under the words of the deed. The next course is to the north-west corner of the patent, which must be understood the true north-west corner of *Friswell*, as proved by the plaintiffs ; thence east, in the east bounds of *Friswell's Patent*, until the north line, to the lotted land in *Plattsburgh*, will include 783 acres, between that line and lot No. 101, in the second division of *Plattsburgh*. By tracing these lines, on the map, it will be seen, that a line, only, is given. No land is included : consequently, the deed is a nullity, inasmuch as nothing is granted. The question, then, is, whether a claim of title, under such an instrument, and an actual occupancy of part, can constitute a good adverse possession, beyond the parcel so occupied.

It is well settled, that a continued possession, for 20 years, under pretence or claim of right, ripens into a right of possession, which will toll an entry. It has never been considered necessary, to constitute an adverse possession, that there should be a rightful title. (*Jackson* v. *Wheat*, 18 *John*. 44. *Smith* v. *Lorrilard*, 10 *John*. 356. *Smith* v. *Burtis*, 9 *John*. 180. 13 *John*. 120. 2 *Caines*, 83.) The party who relies on an adverse possession, must, in the language of *Kent*, Chief Justice, in *Jackson* v. *Shoemaker*, (2 *John*. 234,) show " a substantial inclosure, an actual occupancy, a *pedis possessio*, which is definite, positive and notorious, when that is the only defence to countervail a legal title :" and in *Doe* v. *Campbell*, (10 *John*. 477) it is said, " adverse possession must be marked by definite boundaries, and be regularly continued down, to render it availing." (1 *John*. 156.) There is no doubt, that actual occupancy, and a claim of title, whether such claim be by deed or otherwise, constitute a valid adverse possession, to that extent. But, when a party claims to hold, adversely, a lot of land, by proving actual occupancy of a part only, his claim must be under a deed or paper title. This distinction has been uniformly recognized, and acted upon in this Court. It is on this latter

ground, the defendants must rest, if their possession' can avail. Their defence is, that *Z. Platt*, in 1794, conveyed 783 acres to *N. Platt*, including the premises ; that the first improvement was made in 1794, under *Platt*, being a small parcel, not exceeding 2 acres, which, together with the premises in question, afterwards taken under him, have been continued to the time of commencing this action. This proof does not make out an adverse possession to the premises. Colour of title, under a deed, and occupancy of part, is sufficient proof as to a single lot ; yet it follows, from the doctrine laid down, that the deed, or paper title, under which the claim is made, must, in the description, include the premises. If the title is bad, it is of no moment ; but, if no lands are described, nothing can pass. The deed is a nullity, and never can lay the foundation of a good adverse possession, beyond the actual improvement. There is no evidence here, to shew how far *Platt's* claim extended, unless resort is had to the deed. Boundaries, therefore, including the premises, were indispensable, in order to give this defence the semblance of plausibility. The defendants stand on the same ground as if no deed had been produced ; and, then, the possession cannot extend beyond the place actually occupied.

In *Jackson, ex dem. Dervient,* v. *Loyd,* decided *October term,* 1820, but not reported, it appeared that the defendant had a deed for lot No. 4, but took possession of lot No. 5, adjoining, believing it to be his lot, and claiming it as such. It was held, that the defendant could not establish an adverse possession, to the whole lot, by the actual improvement of a part, because no part of No. 5 was included in the deed.

But, if the deed had been perfect in the description, and included 783 acres of *Friswell's Patent,* the occupancy of a part would not make out an adverse possession to the whole quantity conveyed. The doctrine of adverse possession, applied to a farm, or single lot of land, is, in itself, resaonable and just. In the first place, the quantity of land is small. Possessions, thus taken, under a claim of title, are, generally, for the purpose of cultivation and permanent improvement. It is, generally, necessary to reserve

a part for wood land. Good husbandry forbids the actual improvement of the whole. The possessions are, usually, in the neighbourhood of others : the boundaries are marked and defined. Frequent acts of ownership, in parts not cultivated, give notoriety to the possession. Under such circumstances, there is but little danger that a possession of twenty years will be matured against the right owner ; if it occasionally happens, it will arise from a want of vigilance and care, in him who has title. It is believed, that no well founded complaint can be urged against the operation of the principle ; but the attempt to apply the same rule to cases where a large tract is conveyed, would be mischievous indeed. Suppose a patent granted to A, for 2000 acres ; B, without title, conveys 1000 of the tract to C, who enters under the deed, claiming title, and improves one acre only ; this inconsiderable improvement may not be known to the proprietor, or if known, is disregarded for twenty years. Could it be gravely urged, that here was a good adverse possession to the one thousand acres ? If it could, I perceive no reason why the deed from B to C might not include the whole patent, and after the lapse of twenty years, equally divest the patentee's title to the whole ; for there would exist an actual possession of one acre, with a claim of title to all the land comprised in the patent. No such doctrine was ever intended to be sanctioned by the Court. It may, therefore, be safely affirmed, that a small possession, taken under the deed to *N. Platt*, cannot, under any circumstances, be a valid possession of the whole 783 acres, but is limited to the parcel improved. If the doctrine contended for, prevails, it would sanction this manifest absurdity, that a possession under *Platt's* deed, which conveyed no title, would, as to its legal effect, be more beneficial, than a possession taken under the proprietors of *Friswell's Patent*, where there is not only title, but a good constructive possession, in consequence of the grant, and actual occupancy and improvement of a part. It cannot be useful to pursue the subject farther.

I am of opinion that the plaintiff is entitled to judgment, for an undivided fourth part of the premises.

SUTHERLAND, J.   It is perfectly clear, from the evidence in the case, that the true location of the *Friswell Patent*, under which the plaintiff claims title, includes the premises in question.   He is, therefore, entitled to recover, unless he is concluded by the survey of *Bleecker*, made in 1787, or by an adverse possession of twenty years in the defendants, or in them and those through whom their title is derived.   Both *Friswell's* and *Stewart's Patents* were granted in 1765.   The *Plattsburgh Patent*, under which the defendants claim, was granted in 1784, and was bounded on the west and north lines of *Friswell's Patent* : and in the allotment of *Plattsburgh Patent*, made by the proprietors, in 1787, all the lots bordering upon *Friswell's Patent*, were located upon the lines which the plaintiff sets up as the division lines between the two patents.   This leaves the premises in question within *Friswell's Patent*.   The recognition of the division lines between the patents, by the proprietors of the *Plattsburgh Patent*, are as binding upon the defendants, as are the survey and conveyances made by *Bleecker & Gilliland*, upon the plaintiff.   But, *in truth*, neither party are concluded; and what have been shewn to be the true division lines must prevail, unless the right of the plaintiff has been barred by an adverse possession.

In 1794, *Zepheniah Platt*, the original proprietor of *Plattsburgh Patent*, made a conveyance to *Nathaniel Platt*, of seven hundred and eighty three and a half acres, particularly described in the conveyance, and which was unquestionably intended to embrace the premises in question. This conveyance was made in good faith on the part of Mr. *Platt*, upon the supposition, that the survey of *Bleecker* gave the true *north* and *west* lines of *Friswell's Patent ;* for, in that event, the land intended to be conveyed would have belonged to the *Plattsburgh Patent*.   Under this conveyance, the grantee, by his agent, immediately entered, and made improvements upon a part of the land conveyed.   But it appears from the testimony of *Martin Winchell*, a witness on the part of the defendant, that the acre called the *Fairman place*, and the *half acre* adjoining it on the north, being the premises for which the suit was brought, were not clear-

ed—the first parcel until 1799, and the one half acre, until 1801, or 1802. This suit was commenced in *May Term,* 1818. The defendant, therefore, failed in establishing an adverse possession of twenty years, unless the small improvement made between 1794 and 1797, at what is now called the *Salmon River Village,* is to be considered, *constructively,* a possession of the premises in question, and every other part of the tract conveyed by the deed of 1794.

Upon this point, it is contended by the plaintiff, 1. That the deed from *Zephaniah* to *Nathaniel Platt,* contained a void description, embracing no land whatever ; that the possession alleged to have been taken under it, was, therefore, a mere naked profession, without colour of title, which could never ripen into a right beyond the extent of actual improvement ; or, 2. That admitting the description in the deed to cover the whole tract intended by it, thereby giving colour to the claim of title, by virtue of an adverse possession to that extent ; even, in the latter case, the claim must be confined to the limits actually enclosed and improved under it.

I do not think it necessary to discuss the first objection.; because the second is, in my opinion, sufficient to defeat the claim of the defendants.. There is no proof in the case of an attempt on the part of *Nathaniel Platt,* or of those who claim under him, to designate the land embraced in his conveyance by a possession fence, or even a line of marked trees. This is a defence, for the support of which strict proof has always been required. In *Jackson* v. *Schoonmaker,* (2 *John. Rep.* 230) an inclosure, by a possession fence, but round the premises, was held not to be evidence of an adverse possession, sufficient to toll the entry of the true owner, after twenty years. The Court there say, " This mode of taking possession is too loose and equivocal. There must be a real and substantial enclosure, an actual occupancy, a *possessio pedis,* which is *definite, positive* and *notorious, to* constitute an adverse possession, when that is the only defence, and is to countervail a legal title."

There is nothing in the defendant's case, to justify a constructive extension of the possession, beyond the actual im-

UTICA,
August, 1823.

provement ; which, not embracing the premises in question, the plaintiff is entitled to judgment. This must be for one undivided fourth part, only, of the premises. The case shews no title in the plaintiff, beyond the share which descended to *Wm. Gilliland.*

SAVAGE, Ch. J. concurred, in a judgment for the plaintiff, for one undivided fourth part of the premises ; and the Court gave

Judgment accordingly.