## COTTLE vs. SYDNOR.

- The estoppel of a deed only extends to the parties and privies thereto, and not to strangers

2. A party is not estopped by his declarations, nor by an admission by deed, except as to the parties and privies to the same, from claiming the true lines of his land.

3. Although as a general rule a party in actual possession of part, claiming the whole tract, is deemed in possession of the whole, yet this will not apply as against the real owner also in possession of part, claiming the whole. The only adverse possession as against such owner is actual possession.

See Harold and wife vs. Bailey, 9 Mo. Rep., 326.

## ERROR to Lincoln Circuit Court.

PORTER & WELLS, *for Plaintiff, insist:*

1. The third instruction is erroneous, because it assumes that the patent to defendant conveys a better title than the plaintiff's confirmation of older date.

2. The fourth instruction is erroneous, because it assumes that the plaintiff was only entitled to the quantity mentioned in his grant, although the confirmation was for all within his survey—a larger quantity.

In support of these positions, the plaintiff relies on the decision of this Court at its last term in the case of Harold and wife vs. Simonds and Bailey. The cases are precisely parallel.

3. The court also erred in instructing the jury that twenty years possession of any part of the defendant's tract gave him a title against the plaintiff, who had lived on his tract forty years.

4. There was evidence of residence of twenty years of defendant on a part of his tract, but not the part in dispute, while all the evidence shewed that plaintiff had resided on his Spanish grant for forty years.

5. The court erred on the point of estoppel.

CAMPBELL, *for Defendant, insists:*

1. The plaintiff has not exhibited any sufficient title upon which he ought to recover the land in controversy, even if the defendant had nothing but a naked possession.

2. The highest and most complete evidence of title to land emanating from the United States is a patent describing the land; but when no patent has been issued, other documents may form good evidence of title. Thus, a certificate of confirmation according to survey, and a copy of survey conforming to the confirmation, may be good *prima facie* evidence of title; but when the copy of survey produced does not conform to the survey mentioned in the certificate of confirmation, it furnishes no evidence of title to the land thus described.

3. Where grants were made by the Spanish Government for a specific quantity of land, and that quantity is confirmed by the United States, it is competent for the United States to have it surveyed, in order to distinguish the land thus confirmed from the public land; and in making such survey, if the survey made by the Spanish authorities should be found to contain a larger quantity of land than called for in the grant, it is competent for the United States to have the surplus thrown off, and the survey reduced so as to conform to the true quantity granted.

4. Even if it be conceded that a grantee may claim more land than the quantity of acres named in his confirmation, when the confirmation is made according to survey, and that the United States have no right to curtail the survey and cut off surplus, yet, in order to enable a grantee to hold more than the quantity of land mentioned in his grant, he should be able to establish his survey

satisfactorily by well known boundaries, corners and land-marks, either natural or artificial, so as to show satisfactorily that the land claimed by him is the same identical land mentioned in his grant and survey.

5. The survey made by Palmer, the county surveyor, in connection with the other evidence in the cause, does not afford any satisfactory evidence that the land in controversy and now sought to be recovered by the plaintiff is included within the original Spanish survey alluded to in his confirmation.

6. The Circuit Court erred in permitting the plaintiff to introduce as evidence the plat of survey certified by the Surveyor General, because, although of the same date, it does not appear by any evidence to be the same survey mentioned in plaintiff's certificate of confirmation, which is there described to be a survey recorded in a particular book and page in the office of recorder of land titles; and the very fact of the plaintiff having failed to procure a certificate of that survey from the office of the recorder of land titles, affords *prima facie* evidence that if produced, it proved to be adverse to his claim, and that it would conflict with the survey from the Surveyor General's office, which he has procured, but which is not referred to in the confirmation; and as the plaintiff has produced no other paper to prove the identity of the land claimed in the declaration with the land mentioned in his confirmation, he must entirely fail if that survey from the Surveyor General's office be either excluded or adjudged insufficient.

7. The survey of Palmer, the county surveyor, having been founded on the certificate and plat of survey from the Surveyor General's office, which is not referred to in the confirmation, does not afford any legal evidence that the land surveyed by him is the same land that was confirmed to Cottle.

8. The survey made by Palmer, and on which the plaintiff relies, does not conform to, and is not supported by, the Spanish plat and survey from the Surveyor General's office, according to which he testifies he made it, because it does not call for any corner or mark mentioned in said Spanish plat and survey by which it could be identified, and because the north and south lines of the survey called for in the original Spanish plat are only fourteen arpens long, whereas those lines are twelve poles longer in the survey made by Palmer, and are so made by said Palmer without any lawful authority or good reason for so doing. The Spanish survey, as certified from the Surveyor General's office, calls for a tract twenty-five arpens long by fourteen arpens broad, which would make exactly 350 arpens the quantity granted to said Cottle and surveyed to him by the United States; but the survey made by Palmer is much wider, and by reason of that unlawful extension of width, is made to embrace about one hundred acres more than the true quantity.

9. If the evidence in the cause shews that the plaintiff did not make out a complete title on which he ought to recover, or if on his entire evidence there were sufficient reasons to prevent his recovery, then this cause should not be reversed, even if the court should consider some of the instructions given by the Circuit Court to be incorrect; for if the court can see from the whole record that substantial justice has been done in the matter, they will not disturb the judgment of the Circuit Court because it may have given an erroneous instruction, which should not have altered the result even if it had been decided correctly. Where the record shows a judgment for the right party, it should stand.

10. The plaintiff, Andrew Cottle, was estopped by his deed to Simon Creech, and his deed to Thomas Sydnor, from contending that the western line of his survey is further west than the western lines of the two tracts of land thus sold, and consequently from contending that the premises now in controversy are situated within his survey.

11. The evidence in the cause proves that twenty years before the commencement of this suit, John Waggoner, claiming under Jesse Perkins, was in actual possession of the north-east quarter of section two, in township forty-eight north, of range one west, which includes the premises in controversy; that he claimed to own the whole of that quarter section as his own; inhabited, improved and cultivated it; and that he and Thomas Bowen and John Sydnor, the defendant, have

*Cottle* vs. *Sydnor.*

ever since had peaceable adverse possession of the same, and that consequently the claim of the plaintiff is barred by the statute of limitations, if he ever had one.

12. The original purchase of the quarter section of land above referred to was probably made by Jesse Perkins as early as the year 1818, although owing to delays of the land office, the patent did not issue till the 23rd December, 1826.

13. The title of the defendant, by patent from the United States to Jesse Perkins, and a complete chain of title by deeds from Jesse Perkins to the defendant, constitutes a better title to the land than the plaintiff's title. 1 Mo. R., page 777.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of ejectment instituted by Cottle in the Circuit Court of Lincoln county, to recover possession of a small tract of land alleged to be within the limits of a Spanish survey. The original concession was made by Lieutenant Governor Delassus on the 20th September, 1799, and was surveyed by James McKay on the 23rd December, 1803, and certified by him on the 20th January, 1804. The claim before the board of commissioners was for 350 arpens, situate on the waters of the river Cuivre, in the district of St. Charles. In July, 1803, the board granted the said claimant 350 arpens, situate as aforesaid, provided so much be found vacant there. In September, 1810, the board confirmed to Andrew Cottle three hundred and fifty arpens as described in the plat of survey certified 20th January, 1804. In 1816 or 1817, the lands in this part of the country were surveyed and sectionized by the United States surveyors, and in 1819 or '20, they were brought into market.— In making these surveys, the United States surveyors cut off from Cottle's tract, as it was originally surveyed by McKay, a strip on the west side about six chains in width, and containing altogether near one hundred acres, leaving in the tract, however, still upwards of 350 arpens.— The controversy is in relation to the southern corner of this strip, containing about fourteen acres, upon which are located the dwelling houses and other improvements of the defendant.

The plaintiff, for the purpose of establishing his title, introduced the confirmation of 1806 and of 1810, the survey by McKay in 1803, and a survey by the county surveyor founded upon the original Spanish survey, together with the oral testimony of this county surveyor and the chain carriers, to establish the correctness of the survey and its conformity to the original Spanish survey.

The defendant relied on a patent from the United States for a quarter section, in which the tract in controversy is included, to Jesse Perkins, assignee of James McWilliams, issued in 1826, and a derivative title

from said Perkins to himself.    He also relied on an adverse possession of more than twenty years in himself and those from whom he purchased. He also relied on two deeds made by the plaintiff, the one to Thomas Sydnor, executed in 1837, and the other to Simon Creech in 1828.    In these deeds, the plaintiff, in conveying portions of his Spanish grant, as surveyed by the United States, recognized the corners of his tract as they had been designated in the United States survey.    In relation to the testimony concerning an adverse possession, there was some diversity among the witnesses as to the precise locality of Waggoner's improvements in 1819 or 1820, but there was evidence to show that Waggoner, from whom the defendant derived title, claimed the whole quarter section, upon a part of which he had made improvements.    This quarter section included the land in controversy.    The plaintiff had been in possession of his Spanish claim for forty years.    We do not give the details of the evidence, since the only question we are called upon to decide arises out of the instructions, and sufficient has been stated to show their applicability to the questions of fact submitted to the jury.    The instructions given on the trial were as follows:

1. In this case, the plaintiff, if he recover at all, must recover on the strength of his own title, and not on the weakness of the defendant's title.

2. If the jury believe from the evidence that Palmer, the county surveyor, in making the plat and survey of the tract of land granted to Andrew Cottle and given in evidence in this cause, did not find any corner tree, corner stone, line tree or mark, or bearing tree mentioned or described in the Spanish survey, according to which it purports to have been made, and that said surveyor only found the beginning corner of his said survey by finding the intersection of two old lines which were shown to him by Cottle, the plaintiff, and that he only knew them to be lines of said survey from the information derived from said Cottle, that under such circumstances, said survey made by said Palmer does not furnish any legal evidence that the land contained within said survey is the land confirmed to said Andrew Cottle.

3. If the jury believe from the evidence that the premises in controversy are part of the land granted by the patent to Jesse Perkins, which has been given in evidence in this cause, and that said defendant, Sydnor, holds by regular chain of title to the same under said Perkins, that then the jury must find for the defendant.

4. If the jury believe from the evidence that the tract of land granted to said Andrew Cottle was surveyed by authority of the United States,

in such manner as to give him three hundred and fifty arpens, the quantity named in his original grant, and that the adjacent surplus land on the west not included in said survey thus made was surveyed in the year 1816 or 1817, and sold as public land of the United States, that the premises in controversy were a part of said surplus land thus surveyed and sold, that a patent in due form was issued by the United States in favor of Jesse Perkins for the quarter section including said premises, and that the defendant holds title by a regular chain of conveyances from said Perkins, in that case the jury must find a verdict for the defendant.

5. If the jury believe from the evidence that for the period of twenty years next preceding the time of the commencement of this suit, John W. Sydnor, the defendant, and the persons under whom he claims title, had the actual possession of a part of the quarter section in which the premises in controversy are situated, claiming the whole of said quarter section as their own, and during said twenty years exercised acts of ownership on said quarter section, then they must find a verdict for the defendant.

6. If the jury believe from the evidence that for the period of twenty years next preceding the time of the commencement of this suit, John W. Sydnor, the defendant, and the persons under whom he claims title, had the actual continued possession of a part of the premises in controversy, and cultivated the same as their own, and claiming the whole quarter section in which the same are situated, then they must find for the defendant.

7. If the jury believe from the evidence that Andrew Cottle, the plaintiff, on the 13th day of April, A. D. 1837, by a deed executed to Thomas Sydnor, under the seal of said Cottle, declared the north-west corner of the tract of land thereby sold by him to Thomas Sydnor to be the north-west corner of the Spanish grant on which he, the said Cottle, then resided, and that said deed was duly recorded in Lincoln county on the 19th day of April, A. D. 1837, then said Cottle is estopped in law from contending in this action that the north-west corner of said Spanish grant is at a different place from that mentioned in said deed to Thomas Sydnor.

8. If the jury believe from the evidence that on the 27th day of December, in the year 1828, said Andrew Cottle executed a deed to Simon Creech, under the seal of him, the said Cottle, and in said deed declared that the south-west corner of the land thereby sold to said Creech was the south-west corner of the land of said Cottle, and the north-west corner of said land sold to said Creech was in the west line of the tract

of land of said Cottle, and that said deed was duly recorded in Lincoln county on the 30th day of December, A. D. 1828, then said Cottle is estopped from contending in this action that the south-western corner of his said Spanish grant and the western line of his said grant are in places different from those mentioned in said deed to Creech.

9. The document given in evidence by the plaintiff, and called a copy of a Spanish survey of Andrew Cottle's grant, does not purport to be a copy of a Spanish survey, and is not certified to be such, there is no legal evidence before the jury that it is a copy of a Spanish survey, and therefore does not furnish any legal evidence to prove where Andrew Cottle's land is situated.

10. If the survey made by Palmer, the county surveyor, as given in evidence by plaintiff in this cause, was based upon the document given in evidence by plaintiff and called a copy of a Spanish survey, and not upon a regular and correct copy of the Spanish survey of said grant, then the survey made by said Palmer is no legal evidence to prove where the land of said Cottle is actually situated.

The third and fourth instructions assume that the patent, which issued in 1826, must prevail over the confirmation in 1810, and are therefore erroneous. Harrold and wife vs. Bailey, 9 Mo. R., 326.

Nor do we concur with the position of the Circuit Court that the descriptions of the tracts conveyed by the deeds to Creech and Thomas Sydnor, and the verbal declarations of Cottle, estopped him from claiming the true lines of his survey. We know of no principle which would authorize a stranger to avail himself of a mistake of this kind, or that would permit him to derive a benefit from an act done by the plaintiff under a misapprehension of his rights. So far as Creech and Thomas Sydnor are concerned, Cottle would not be allowed to deny what he has stated in his deeds relative to the corners of his tract. But the defendant in error is no party or privy to those conveyances. In Jackson vs. Woodruff, (1 Cow., 276) A owned a patent and B an adjoining patent, and in the location under their respective patents, A, by mistake, curtailed his location on the side of B, in consequence of which, B claimed up to A's location, and deeded a supposed gore between the patents. It was held that A was not concluded by giving conveyances of his land according to such mistaken location. The estoppel extended no farther than to benefit those to whom the conveyances had been made.

The question of adverse possession, upon which the court gave instructions, was not placed before the jury in a proper shape. It is true, as a general principle, that where a party enters a tract of land, claiming

the whole under a paper title, the possession is adverse as to the whole tract. But where the actual owner is in possession of a part of his tract, he has legal and constructive possession of the whole, and a disseizin can only be effected by an actual ouster. The legal seizin as to the unoccupied portion of the tract follows the legal title, and the *pedis possessio* alone creates an adverse title. Here the plaintiff, it seems, had been in possession of a portion of his Spanish claim for forty years, and this possession of part gave him constructive possession of the whole tract.— The only adverse possession which could give title under these circumstances would be an actual occupancy. His ignorance of the true location of his lines could not affect his title. Hall and others vs. Powell, 4 Serg. & R., 465; Barr vs. Gratz's heirs, 4 Whea., 223; Ridgeley's lessee vs. Ogle, 4 Har. & McH., 129; Hord vs. Bodley, 5 Litt., 88; Gray vs. Moffitt, 2 Bibb, 508; Green vs. Siter, 8 Cranch, 229.

Judgment reversed and cause remanded.