## JAMES POPE, RESPONDENT, *v.* LEWIS HANMER, APPELLANT.

*Adverse possession — substantial inclosure — Cultivation and improvement — Code, § 85.*

In this action, brought to recover damages for a trespass committed upon the land of the plaintiff, the defendant claimed to hold the lot by adverse possession. It appeared upon the trial that the lot was inclosed on one side by a highway, on two sides by fences and on the remaining side by a distinct line of marked trees from corner stake to corner stake. *Held,* that the lot was not protected by a substantial inclosure within the meaning of subdivision 1 of section 85 of the Code.

It further appeared upon the trial, that the defendant had occasionally used the lot, (a wood-lot) as a pasture, and that he had, now and then, taken wood and timber from it for shingles and staves. *Held,* that this did not show it to have been usually cultivated or improved, within the meaning of subdivision 2 of section 85 of the Code.

APPEAL by the defendant from an order denying a motion for a new trial, made on a case and exceptions.

The action was trespass for unlawfully entering upon the plaintiff's land and cutting and carrying away a quantity of wood.

The defense set up was a general denial, title and possession in the defendant, and adverse possession. The case was tried by jury, and a verdict of five dollars damages was rendered against the defendant. Thereupon a case with exceptions was made and settled, and a motion thereon was made at Special Term, for a new trial, which motion was denied. An appeal was then taken to the General Term. The questions raised on the appeal appear in the opinion.

*C. S. Baker*, for the appellant. The land was substantially inclosed and cultivated or improved. It was used for the supplying fuel (wood-lot). (*Beecher* v. *Van Valkenburgh*, 29 Barb. S. C., 319; *Craig* v. *Goodman*, 22 N. Y. R., 170; 1 Hilliard on Real Property [4th rev. ed.], 66, note and cases cited; *Dominy* v. *Miller*, 33 Barb. S. C., 386.)

*J. McGuire*, for the respondent. Where a party has no paper title, a possession or occupation to be adverse must be an actual enjoyment of the land for agricultural purposes, such as plowing, sowing, erection of buildings, making improvements generally. (*Doolittle* v. *Tice*, 41 Barb., 181; *Lane* v. *Gould*, 10 id., 254; *Doe* v. *Campbell*, 10 Johns., 477; *Jackson* v. *Wheat*, 18 id., 338; *Jackson* v. *Warford*, 7 Wend., 62; *Corning* v. *Troy Iron and Nail Factory*, 34 Barb., 529, affirmed in 44 N. Y., 577.) The defendant's deed confining him to lands on lot three, he has no constructive possession of any land on lot four. (*Jackson* v. *Woodruff*, 1 Cow., 286, 505; Tyler on Eject., etc., 895, and cases cited.) The plaintiff had possession of the land, and the action could be maintained. When a party has a deed for an entire lot of land, a part of which is under actual occupation, within a substantial inclosure, the legal effect of the deed is to enlarge the occupation and to create a constructive possession of the remainder. (*Jackson* v. *Woodruff*, 1 Cow., 276; *Jackson* v. *Bowen*, 1 Caines, 358; *Jackson* v. *Olitz*, 8 Wend., 440; *Wickham* v. *Freeman*, 12 Johns., 183; *Jackson* v. *Hazen*, 2 id., 22; *Miller* v. *Shaw*, 7 Serg. & Rawle, 143.)

BOCKES, J.:

The parties were owners of adjoining lands, the plaintiff on the south and the defendant on the north of the dividing line. There had been a fence for many years on the north of the plaintiff's cultivated land, inclosing it on that side and separating it from the uncultivated wood and timber land, which fence the plaintiff insisted was at a considerable distance south of the true line, and was, as he claimed, erected and maintained for his own convenience. The defendant, on the other hand, claimed and insisted that this fence marked the southern boundary of his lot, and the action was brought against him for entering upon and cutting wood on the strip of land situated between what the plaintiff claimed to be the true line and the fence. Much evidence was given bearing on the issue, and it may be here observed that no question is raised on this appeal, in regard to the admission or rejection of evidence. The first point urged upon our consideration is, that the court erred in refusing to direct a verdict for the defendant on the evidence. There was very manifestly no error in such ruling. Without recapitulating the evidence and its bearings, it is sufficient to say that a case was made for the jury on the proof. There was a question of fact certainly on the evidence as to the location of the true line, and also on the question of practical location, supposing that the fence did not mark the true line. These questions were properly given over to the jury, and, on this appeal, must be deemed settled by the verdict. The jury found, as they had a right to find on the evidence submitted, that the true line between the premises of the respective parties was north of the fence, and would include and give to the plaintiff the lands where the alleged trespasses were committed ; and further, that there had never been any practical location of the line between the parties, by the owners on the north and south of it, which barred the plaintiff's right to insist on the true line as the northern boundary of his land. Thus the verdict determines the rights of the parties, unless obtained or rendered under some erroneous instruction by the court to the jury. This brings us to the consideration of the only important question presented by this appeal. On submitting the case to the jury, the learned judge held and charged that there was no question of adverse possession in the case. He said : There is no claim depending upon adverse posses-

sion, for the reason that the property in dispute is wood-land, and was incapable of actual possession or use; consequently the principle of adverse possession as establishing title to land does not come into the controversy. This ruling must be considered in view of the provisions of sections 83, 84 and 85 of the Code of Procedure. Section 83 declares what shall constitute adverse possession "under written instrument or judgment." This section need not be here considered, inasmuch as the defendant made no claim to any part of lot number four under either. His train of title did not purport to convey any part of lot number four. Section 84 provides that when the adverse holding is under claim of title, not founded upon a written instrument, * * * the premises *actually occupied, and no other*, shall be deemed to have been held adversely, and section 85 declares what shall be deemed an *actual occupation*, to wit: (1) Where the land has been protected by a substantial inclosure; and (2), where it has been usually cultivated and improved. As above suggested, the facts proved did not bring the case within the purview of section 83. The defendant showed no paper title, or claim founded on a written instrument, to any part of lot four, on which the *locus in quo* was situated. If his title in fact embraced the *locus in quo* as part of lot three, there was no question of adverse possession whatever, for it was not disputed, indeed was conceded, that he owned to the south line of lot three, wherever that might be in fact, or as established by practical location, and the location of the line to which it was conceded the defendant had title was left to the decision of the jury on the evidence. Thus it is seen that the defendant had no title, nor did he make claim of title upon a written instrument, to any land south of the line, wheresoever that line should be found to be, either in point of fact or by practical location. Consequently his case on the proof was not brought within the purview of section 83. If he had any case for an application of the law of adverse possession, it was because, having title to all or part of lot three, possession had been extended in good faith over part of lot four, on the mistaken supposition that the train of title in fact embraced the land and justified such possession. (*Hallas v. Bell*, 53 Barb., 247.) But a claim of adverse possession under such a state of facts is controlled by sections 84 and 85 of the Code

of Procedure. It would be the case of a party claiming title not founded upon a written instrument; in which case the premises *actually* occupied, *and no other*, shall be deemed to have been held adversely. (Code, § 84.) Now, for the purpose of considering the question under discussion, the *locus in quo* must be regarded as south of the line, or not within the description contained in the defendant's line of title. Then, was the possession by the defendant and by his predecessors, of the *locus in quo*, an *actual* possession within the requirements of the law? This is to be determined by section 85 which provides that, " for the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument or a judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only : (1) Where it has been protected by a substantial inclosure; (2) where it has been usually cultivated and improved." (Code, § 85.) It cannot be maintained that the *locus in quo* in this case was protected by a substantial inclosure. The premises claimed by the defendant were not so inclosed. Accept the statement of the defendant's counsel, as given in his points, that it was " inclosed on two sides by fences, a highway on another and a distinct line of marked trees from corner stake to stake on the other," and the lot could not be deemed protected by a substantial inclosure. (*Doolittle* v. *Tice*, 41 Barb., 182.) Corner stakes do not, nor does a line of marked trees, constitute a substantial inclosure. Then, was the defendant's possession and that of his predecessors such as was required by subdivision 2 of section 85 with a view to the establishment of title by adverse possession? Had the *locus in quo* or the defendant's lot, of which it was a part as claimed, been usually cultivated or improved? The lot was a wood-lot, and the utmost that was proved as to possession even (to say nothing as to cultivation and improvement) was an occasional pasturing upon it, and now and then getting wood and timber for shingles and staves, and this only to a very inconsiderable and limited extent. To adopt the language of the learned judge in *Doolittle* v. *Tice* (*supra*), there is no evidence that the defendant adopted any of the means usually employed to improve the land. He never plowed, sowed or tilled it, and it was then added, that this statute had in view the ordinary cultivation and improvement of lands, in the manner in which they

are usually occupied, used and enjoyed by farmers for agricultural purposes, such as plowing, sowing, manuring and the like. In this case there can be no pretense that the defendant had thus cultivated or improved the lot. (See, also, *Lane* v. *Gould*, 10 Barb., 254.) In the last case cited the rule was laid down, that to make out an adverse possession of lands so as to vest the title, where there is no deed or other written instrument, there must be a real substantial inclosure — an actual occupancy — a *pedis possessio*, definite, positive and notorious, or they must have been usually cultivated or improved. As regards an actual possession — a *pedis possessio* — with a view to establish title by adverse holding, in a case like the one in hand, *Jackson* v. *Woodruff* (1 Cow., 286) is in point. (See, also, *Crary* v. *Goodman*, 22 N. Y., 170–173, 174, 175.) These cases declare the rule to be that where a grantee, in taking possession under his deed, goes unintentionally and by mistake beyond his proper boundaries, and enters upon and actually occupies and improves lands not included in the deed, claiming and supposing them to be his, such occupation will be deemed adverse within the meaning of the statute of limitations, *but only to the extent of his actual occupancy by cultivation and improvement.* So where a party rests upon his possession of land, outside the description in his deed, the possession, to be effectual as an adverse possession, must be an actual occupation by improvement and cultivation. If the above conclusions be sound, and they seem to stand on authority, the learned judge was right in his instructions to the jury, that the question of adverse possession was not in the case. There was no evidence submitted on which the defendant could predicate a title to the *locus in quo*, by adverse possession. So, also, these conclusions make the case one where the possession must in law be deemed to accompany the legal title, hence trespass might be maintained by the party holding such title. It seems, therefore, that the case was properly disposed of at the Circuit, and the order appealed from should be affirmed, with costs.

LEARNED, P. J., concurred.    BOARDMAN, J., not acting.

Order affirmed, with costs.