But as they proceeded mainly on the ground that the claim of the defendant below was bottomed on a grant from, or contract with, a foreign government, which the court here rejected as not arising in the case, the arguments are, therefore, omitted,
RThe defendant in. error made three additional points against the adverse possession of the defendant below,
1. That the papers, under which he claimej, forbid the presumption that he entered under color of title.
2. That he. could not he deemed, to have held under Mao kay. .
*595 8. That the title was in Great Britain at the time of his entry, against whom the statute of limitations did not run j and his possession, not then being adverse, .could not become so without the acquisition of a new and better title.
Jones, Chancellor,
(after stating the facts.) The evidence shows continued possession of the lot lay the defendant and his ancestors, for upwards of thirty-fiv.e years, under a claim of title, and against all the world, This .continued possession is strengthened by the anterior possession pf the "father, interrupted only by the incursions of the enemy, and their destruction of his domicil; and it is more materially fortified by the refusal of the elder Fronabois to permit the surveyor of the .claimants under the patent to enter upon the premises, and the subsequent descent cast from the ancestor to the heir. It might, with plausibility at least, be contended,, that the peremptory refusal of the elder Frpmbois to permit the surveyor of the patentees to enter upon the lot, and his open resistance to their claim pf title tp it, amounted to a disseisin • and if so, the descent cast would toll the entry, and the action of ejectment could not be sus? tained. But if it was not a disseisin, it was a decided act pf hostility to the title under which the lessors now claim, It was conclusive proof of an adverse holding. This survey was upwards qf twenty years anterior tp the commencement of the suit, and from that time, if not from an anterior period, the defendant is clearly entitled to date his actual adverse possession against these lessors and those whom they claim. This possession would seem to be elusive. Why, then, did not his defense prevail. The reason assigned by the supreme court is, that he held under a claim of title derived from a foreign government, and that that claim of title rendered his possession unavail? ing.
Circumstan“adverse possession,
Whether a disseision descent
?essoJ g°P" vey by the onteelf^proof an adverse
*It is found by the special verdict, that the premises were held under a' paper writing, which was in tíie possession of the elder La Frombois soon after the revolutionary war, bearing date June 28,176.8, and signed by Franpis kay, purporting to be a permission from' Mackay to La *596 Frombois to take two lots of land in his seigniory on Lake Champlain, to settle himself thereon, and a promise that when the conveyances of the lots should be made, for one of which he should pay no rent, only one of acknowledgment, in case the lot of land he should take should be required to establish the domain, he would replace to him as much improved land, with buildings, &c., as might be found on the said two lots. The jury find that the defendant’s ancestor always claimed the land as his own. under this writing; and that he claimed under Mackay, who was an Englishman, and resided somewhere about ISTew York.
*595 ^ Thetmet»| defendant be.-, claimea*
*596 The defendant appears by the special verdict to have had in his possession another writing, in the French language, purporting to be a certificate, given in the year 1786, by one Desdevans, who calls himself a sworn survey- or, having a commission from the king of England and from the United States, residing on Lake Champlain, district of Clinton, stating, that at the request of Jean Baptiste Lafoi, otherwise called La Frombois, the father, an inhabitant of said Lake Champlain, surveyor of Mr. Francis Mackay, he went to the habitation of La Frombois, and being there, after having examined the title of conveyance of said Seignor Mackay, he made a survey of the lots, a detailed account of which he gives in the style of a French surveyor, and which certificate he indorses thus: Copie proces verbal, &c., 2d September, 1786.” ■
These documents may be slender evidences of title; but the question is, whether this documentary evidence, slender as it may be, is not sufficient to give a character of adverse possession to the occupancy of La Frombois under it, and to rescue him from the reputation of being a mere trespasser. It is not necessary, to constitute an adverse possession, that ^ should have commenced under an effectual deed. If the . , possessor claims under written evidence of title, and on producing that evidence, it proves to be defective, the character *of his possession as adverse, is not affected by the defects of his title. If the entry is under color of title, the possesskm will be adverse, however groundless the supposed title *597 may be. The fact of possession and its character, or the quo animo of the possessor, are the test.[1]
*596 It is riot neccssary to an adverse possession, that it menoe under deed effeotual Claim under written evidence of title, *597 though defec*l7® t13 auffi"
In this case, the continued possession of La Frombois is conclusively shown, and the quo animo is apparent from his uniform claim of title, and continued exercise of acts of ownership. The writing produced, admitting it to be *597-1 simply a contract for a conveyance, is in accordance with the possession he held, and the claim' of title under it. His entire Confidence in his title; and his reliance upon its' sufficiency to protect his' possession, and the" assertion of his rights under it against the claim of the proprietors under *597-2 the patent,, are* decisive of his own opinion7 and- belief- in the validity of his title; and, for aught that is found by the jury in the special verdict,, he had reason to believe that the title under which- he- held, was sufficient for his protection. It-was an express- agreement by a person eíaisa *597-3 ing to have the right to contract for the disposal of the land, to convey to him the lot he should locate, when conveyances were to be given, and an agreement that he should enter into immediate possession, and hold the premises thus contracted to be conveyed to him, without rent, until the conveyance should be given.
*597 Entry under color of title sufficient, the' grgUn¿jggg 8 Possession and quo animo are the test.
Both fully shown in this case,
*597-4 Under such an agreement, reduced to writing, and followed up by possession and improvements, the defendant acquired a title in equity to the land, if Mackay, the party contracting to convey, had at the time, or afterwards, acquired the right or power to perform his agreement. It *597-5 was a contract which equity would have enforced the performance of, and the right of La Frombois under it was the more perfect and stable, as the consideration had obviously been already paid or satisfied by him to Mackay, and there was nothing further to be done by "him to entitle him to a conveyance of the legal title. Hence it probably was, that he insisted so firmly and peremptorily upon his absolute right to the land, and put his claim to it upon the ground of title, doubtless resting upon some subsequent conveyance in execution of the agreement, or considering his contract tantamount to a deed. It does "xnot expressly appear that he ever obtained an actual conveyance for the lot; but he had an agreement which ’entitled him- to a deed. He may have been in possession of some further muniments, which, in the conflagration of his house by the enemy, or from some other cause, had been destroyed or lost. But suppose the contract to have been his only title; it was an absolute engagement of a person assuming to be owner, to give him a deed of conveyance. What reason had he for distrusting the ability of Mackay to give him an effectual deed of conveyance for it ? He is found in possession in 1776, and must have taken the possession some considerable time before; for he had made improvements on the lot, and erected a dwelling house upon it, which he occupied. He was expelled by the public enemy, and continued an involuntary exile from it during the war; but on the restoration of peace, he returned to it as to his domicil, re-built his house, repaired the ravages made in his absence upon his farm, and remained in possession during the residue of his life, always claiming the estate, and deal- *598 mg with it.as his own, and at his death, transmitting it as an inheritance to his son. Daring all this long period of time, from 1776 to his death in 1810, his possession and that of his son, from his death to the commencement of this suit, was peaceable and uninterrupted, and with the solitary-exception of the act of the surveyor in 1798, which was repelled at once, and the title of the possessor asserted and maintained against him, no adverse claimant appears to impeach the title of the father or the son, or to set up any claim of title in another. Then had not the father, from the time of his entry until his death, the greatest reason to believe, that the title he held under Maclcay, whether that title was legal or equitable, was valid in law, and gave full protection to his possession and improvements ? And if he had reason to believe, and did believe, his title to be good, as he must be presumed to have entered under that title, his possession having continued for twenty-six years after his return to his home at the close of the revolutionary war, must bar a legal "recovery by the plaintiffs, admitting them to have the legal title, in this form of action. If there could, under other circumstances, have been any force in the objection, *that the owners may have been ignorant of the defendant’s adverse claim of title, and may have supposed him to hold in subserviency to the title of the rightful owner, the distinct and open avowal to the surveyor in 1798, by La Frombois the elder, of the hostility of his claim to that of the proprietors under the patent to Dean, was full notice to his employers that the possession was adverse to them; and the interval of time between that occurrence and the commencement of this suit, if we place no reliance on the descent cast, by the death of the father, upon the son, is of sufficiently long duration to bar the remedy by this action of ejectment, by the rightful but grossly supine proprietors of the land.
*597-4 A written agreement to convey land, the consideration being paid, though executory, may be the foundation of a claim of ad-" verse possession, which will bar an entry.
*598 But the defendant is said to claim his title under a foreign government; and the two writings or documents produced on the trial, are relied upon as evidence, to show that such was the character of his claim. I am unable to discover any proof of this allegation in the special verdict, *599 The defendant’s claim of title is under Francis Mackay : but how does it appear that Mackay held or claimed-under a foreign government? The jury find that he was an Englishman. The agreement he gave to La Frombois was in 1768. At that time, the Canadas were provinces of Great Britain, and Maekay appears to have then resided in Montreal. The jury find him to have afterwards resided in the vicinity of ¡New York. The intendment is, that whatever right or title he claimed to the land, was under the government of Great Britain, which -is admitted to be a legitimate source of title. There is no evidence in the special verdict of 'any claim’ of title by La -Frombois, -father or son, under any foreign government, nor does it appear, by the finding of the .jury, that- Mackay derived his title or made his claim to the land under any foreign power. How, then, can this court act upon the assumption that the possession of the elder La Frombois was taken under a grant from ’a foreign government ? It is said that the facts’ found show that he intended to hold under the French government. If so, the conclusion must be drawn by this court from the evidence contained in the writing and certificate, or found by the jury: but the character of the holding, and whether the claim was under the French or *English government, ■ was a question of fact for the jury to find. This court cannot intend it.
*598 Whether the defendant be-under a for-g°vemThis is not special verdict
*599 When under the French or English government, should have been found by the jury.
In the case of Jackson v. Waters, (12 John. 365,) which is supposed by the supreme court to govern this, it is expressly stated that the claim was under a grant from the French Canadian government, to one La Gauchetierré, prior to the conquest of Canada; and that "fact brought up the question of the validity of a title derived from a French grant in opposition to a subsequent colonial grant, ánd the effect of a possession avowédly taken and held under such a title. But these questions cannot arise on this special verdict. It does not appear by this verdict that La Frombois, the defendant, claimed under a French grant; and we cannot look out of the special verdict for the facts of the case. In the case of Barnes v. Williams, (11 Wheaton, 415,) it appeared by the special verdict that the claim of *600 the plaintiff was founded upon a bequest of certain slaves. It was essential to a recovery át law, that the assent of the executors to the legacy should be proved; and Ch. J, Marshall said, that although, in the opinion of the court, there was sufficient in the special verdict from which the jury might have found that fact, yet they had not found it; and the court could not, upon a special verdict, intend it; that the special verdict was defective in stating the evidence of the fact, instead of the fact itself. It was impossible, therefore, that a judgment could be pronounced for the plaintiff: In this case, the jury neither found the fact, nor any sufficient evidence of the fact, that La Frombois held under a French grant. The claim of title to lands within the territory of this state, or the late colony, must be intended to be under the state or colonial government, unless the contrary expressly appears. We cannot recur to another case occurring between other parties, and involving other points, and disclosing different facts, for our guide in determining this; and if we could refer to the case relied upon as not being distinguishable from this, we should find it not only between different parties, but for a different lot in the patent. The ejectment there was for part of lot Mo. 70; here it is for lot Mo. 72 ; and if it be conceded that they were both originally included under the same ^agreement, it does not follow that the subsequent history of both is the same. The objection to the foreign origin of the title, which proved fatal to the defence of lot Mo. 70, may have been obviated if it ever applied to lot Mo. 72; and the silence of the special verdict on this point, is a strong indication of a want of confidence in the objection, or the want of proof to sustain it. If the plaintiff below intended to rely on the foreign origin of Mackay’s title, he should have shown it. The defendant reposed himself essentially on his possession ; and the agreement with Mackay for a conveyance, was produced -to show that his possession was taken and continued under claim and color of title. He had a right to rest upon the presumption that the title asserted by Mackay to the land, was derived from the government of the country and not from *601 any foreign power; and if the plaintiff chose to leave the matter on that presumption, he cannot complain of any prejudice from his election. If, in point of fact, Mackay did claim the premises in question under a French grant, and that fact had appeared in evidence at the trial, the defendant might have repelled its force by showing a subsequent confirmation under the English government,, or by some other evidence.
*599 Jackson v. Waters, 12 John. 365.
The court cannot look out of the .special verdict for the facts.
Barnes v. Williams, 11 Wheat. 415.
*600 The assent of an executor being necessary to the recovery of a 1» gacy, the jurj roust find such assent expressly, and though they find' specially, facts from which it may be inferred, the court cannot intend assent. Per Jones, 0., on the authority of Barnes v. Williams, 11 Wheat. 415.
*601 But without speculating upon suppositious cases, I must limit myself to the special verdict; and I think the facts it contains do not warrant me in the conclusion, that the defendant’s possession was taken under a foreign government, or that the elder La Frombois had any reason to believe or suspect that Mackay, who contracted to convey to him, did not derive the title he claimed to have, from a legitimate source.
Here the facts found do not warrant the conclusion that the defendant claimed under a foreign government.
I do not consider the agreement of Mackay, or the certificate of the surveyor, as furnishing any conclusive evidence of the foreign character of his title. They contain decisive internal evidence of being drawn up by a French scrivener, or in a French country, and with reference to French laws and usages; and the papers are both in the French language. The contract was made at Montreal, and La Frombois, most probably was a French emigrant; and it was to be expected that a contract drawn up by a French scrivener in his own language, should employ the terms which they were accustomed *to apply in the description of grants of land. But be that as it may, the circumstance, whatever might be its relative weight and importance, was matter of evidence for the jury; and if parol evidence could be admitted of a fact which, if it existed, must be of record or in writing, was tó be urged to them as proof of the fact of the French character of the claim.
But it is said that the agreement of Mackay was anterior to the patent to Dean; and that he could not claim under the English government, or if he had any equitable claim under the colonial government, such claim must have been disregarded. Admitting the colonial patent to Dean to be the only legitimate title to the land, it does not follow that *602 Mackay derived title under a foreign grant, or did not claim under the colonial government. He may have had a pre-emptive right which Dean and his associates after-wards acquired by purchase or otherwise; or he may have assumed to be the owner of the land without any title to it, and when it belonged in truth to the crown. Whatever the right of Mackay was, if La Frombois went into possession, supposing it to emanate from a legitimate source, and in confidence that his contract entitled him to a conveyance, and that Mackay had the right to give the conveyance he promised, his possession would be adverse, notwithstanding his confidence was misplaced, and the title of Mackay, under whom he entered, was invalid. Whether a grant of the land under the authority of the French government, prior to the conquest of Canada by the British, would vest any title in the grantee, or confer on him the right under the treaty of Paris to a patent from the English government, either absolutely or upon terms, are questions which I consider it unnecessary and improper now to discuss. I assume that whatever right Mackay supposed himself to have to the land, no evidence appearing to the contrary, he founded upon some title or claim to a title under r . . the colonial government; and his assuming to be entitled, .and contracting to convey, gave to the purchaser under , . , . , , . “ ’ ° ,, , r . , him a color of title, which would characterize the possession of such purchaser under such contract, as adverse against all other claimants. If the title was in the people at the time, the possession of La Frombois, the purchaser, under the assumed ^ownership of Mackay, would not operate as a bar, unless after an actual possession of forty years; but as against all individual owners, twenty years would preclude the remedy by ejectment. An adverse possession will not obstruct the operation of a patent: and an occupier of land under an invalid claim of title, must have a continued possession of forty years to bar the peopie or the grantee from the recovery of the same by suit. But where an entry has been made on land vested in the people, by a private citizen claiming it as his own, and is suffered to hold the for the of *603 the person, so entering and so holding, will acquire tho right freely to hold and enjoy the same against the'.'people and their grantees. If, then, the people, after sueh entry by a citizen, grant the land within the forty years by let* ters patent to another, the title of their grantee will pre* aoainst the adverse possession of the occupier, if he asserts his right and evicts the intruder within the time all°we'0- by law for his entry. But the grantee of the peo* pie, in common with all other individuals, must perfect his ... . .... title by entry upon the settler, within twenty years after bis title accrues Under the patent, or his entry will be barred, and his remedy by ejectment lost, The mere posses* sion of land without any claim of right gives no title, howevcr long it may continue and the true Owner may law- ° , ' J fully enter upon such an occupier at any distance of time, because he does no wrong to the occupant, who claims no right. It is the claim of title that makes the possession of y^ holder of the land adverse to all others; and sueh a pos* session as owner, under a claim of right, will be matured by time into a title against the people, as well as the eitizen : and the effect will be the same, however invalid or ’ groundless the title of the holder maybe. To destroy the operation of a twenty years possession, it must appear that the occupant did not claim to be the Owner of the land, ipbc actual possession and improvement of the premises, as bwhers are accustomed to possess and improve their estate, without any payment of rent, 'or recognition of a title in another, or disavowal of a title in himself, will, in the abgence of all other evidence, be sufficient to raise a presump* . ; A tion of bis entry and holding as absolute -'owner; and uniesg rebutted by other evidence, will establish the fact of á . claim ot title.
*602 Going into possession under a supposed rightful conveyance,a constitutes an ad-posses-though B;on taken one.
gueh exeeu. toiy _ contract iC0° t¡tiBj °t°0’ found an ad" vgrse possession.
, ¥ the title be in the peopie, it is not ^"years^adverse possesmon'
But astoinfrs^ao years bar
Adverse pos®b”g will not ob-|ration of°Pa
adverse possession for and their grantees.
*603 if; after ¿a-skirt^ ced, the people Srlo years'1 the grantee must assert his right within Ws title &aecrues.
Mere possession without claim of right will never give title.
Claim of title makes the posverse, however ciMm'may be° and this may be matured by time into a against aifindividual or the people.
andFimprove^ ment, such as wíth.CUownerí will, of itself, ripen into titld less the possessor veebgnize title in tteavow titib in himself.
Now, in the ease before the court, to state it most strongly against the defendant, La Frombois entered prior to the year 177.7, under" a groundless claim originating in ah agreement made before the patent to Dean was issued. This title was without foundation, and á nullity, and the true title was vested in the crown of Great Britain. Ia the year 1769, being about one year after the agreement *604 between Mackay and La Frombois, under which the latter entered and held, the land was granted by the people to Dean; and the title of the people transferred to the patentees. The possession of La Frombois, if he had then entered under his purchase from Mackay, did not render the letters patent inoperative: but was nevertheless adverse in its character against the people; and so continued against their grantees. It had been suffered to mature by time into a right; for upwards of fifty years had elapsed from the date of the patent before the suit was commenced; and more than fifty years had run against the people and their grantees, after the first entry of the elder La Fromhois, and after the passage of the act of limitations.
If, then, the benefit of the adverse possession of the defendant was not lost by him, by his claim of title under a foreign government, his defence was impregnable; and I am satisfied that this special verdict does not find the fact of a grant of the land by a foreign government, nor any facts justly imputing to the defendant a claim of title under any such grant.
It follows, that the lessors of the plaintiff are not entitled to judgment on the special verdict; and that the defence of the tenant must prevail. My opinion, accordingly, is, that the judgment of the supreme court ought to-be reversed.
Judgment be-reversed!111 bS
Golden, Senator.
I shall render my judgment on the special verdict presented by the record, without reference to facts which may have appeared in any other case. If the jury, in the case we are now deciding, have not found that the plaintiff in error claimed under a grant from a foreign government, I shall not assume that he did so, because, in Jackson v. Waters, it is stated that the defendant in thatcase claimed under patent from the province of Canada.
The decision should rest on the finding in the special verdict.
I do not mean to question the law, as it has been stated by the counsel for the defendant in error, on several material points.
Points conceded to the defendant in error.
*1 admit that a grant from anv other power than that which governed the territory which is now the state of Mew *605 York, could convey no valid title to lands which are within „ , j ., J that territory.
I admit that the French Canadian government may never pave had authority to grant lands within what are now the limits of this state. .
I admit, also, that if an adverse possession be claimed under a grant or conveyance which never could have been the foundation of a good title, it cannot bar the recovery of one who shows a perfect title.
I believe the law to be consistent with these positions, but I have assumed that it is so without having followed the counsel through that deep research, which their arguments and quotations evinced they had mace, into the history of the European possessions in this country; and as to the extent of the rights which a nation may acquire by discovery or conquest. I do not believe it accessary to settle these points in order to render a correct judgment in this case; because, it is a principle not only conceded by the counsel for the defendant in error, but established by the supreme court in the case of Jackson v. Waters, and in the very judgment under consideration, and by innumerable cases which were cited on the argument, that where a possession is held under a claim of title which is not shown to be bad, and which might be good, it shall, after a sufficient lapse of time, bar every other title.
If I could agree with the supreme court, that this case cannot be distinguished from that of Jackson v. Waters, I might not dissent from the judgment they have rendered in favor of the defendants in error: but, in my opinion, there is an all-important difference between the two cases, as to the very fact on which the respective judgments are founded: that is to say, in the former case it is stated that Francis Mackay claimed under a grant from the French government; and *no such fact is found by the special verdict under consideration. All that is said as to the title of the plaintiff in error, is that, upon the trial, he produced a writing in the French language, dated at Montreal, the 28th of June, 1768, signed by Francis Mackay; by which Mackay gave permission to La Frombois to take possession *606 ofj and to settle himself on two lots of his, Mackay’s, seignory; and promised that when the lots should be conveyed to La Frombois, there should be only a nominal rent reserved as to one of them; that La Frombois, the father of the defendant below, always claimed the land under the above mentioned writing, and that the defendant below was left in possession at the death of his father; that he claimed as heir-at-law of his father, and continued in possession up to the commencement of the suit.
*605 not find that the pMntmn error was ungovernment!'111
*606 what it does state‘
The importance of the difference of the facts presented in this case and that of Jackson v. Waters, is marked by the expressions of chief justice Thompson, in rendering the judgment in the latter case. He says, “ The origin of the adverse possession set up by the defendant, was that taken by La Frombois in the year 1763, by permission of Mackay, who claimed under a grant made by the French government of Canada to La Gauchetierre, prior to the conquest of Canada by the British.”
There was another writing which the jury do not say the defendant below produced, or that he attempted to make any title under it; but merely that he had in his possession, at some time or other, such a writing. It appears to be a memorandum, or proces verbal, of a survey made by a person styling himself a sworn surveyor, having a commission from the king of England, and the United States. This instrument, either in French or as it is translated into English, is not very intelligible. I have not endeavored to understand more of it, than to be perfectly satisfied that it can have no possible bearing on the questions which arise in this cause, unless it be to show the extent and limits of the possession of La Frombois. La Frombois the elder, and his heir, had, under the writing first above mentioned, and his long possession, a good equitable title against Mackay, and all claiming under him; for though it may be, as chief justice Thompson *says in the case of Jackson v. Waters, that La Frombois, if he had been out of possession, could not have maintained an action on his title from Mackay; yet, being in possession, and having been so for such a length of time, he could not have been *607 turned out by Maekay or any claiming under hinq, Yet ver-7 iearne(l and satisfactory judgment raisonne, (if I may be allowed to use a term for which our own language joeg not farnish an equivalent,) of lord Erskine, in the case. of Hillary v. Waller, (12 Ves. jun. 266,) and numerous eases in our books, all appear to me to establish, that a grant from Maekay to La Frombois, after a possession of much less endurance, would be presumed, in order to support his title from Maekay. Then the question is, what was Mac-? kay’s title ? Are we to assume that it was under a. French grant. ? There is no other earthly evidence of this, than, that the writing of the 28th of June, 1768, is in French, and that it is dated at Montreal. Any presumption arising from these facts, slight as it is, is repelled by the further finding of the jury, that Maekay was an Englishman, and resided somewhere about New York. Unless, therefore, we resort to the case of Jackson v. Waters, and take the facts of that case as if they were found by the special verdict in this case, which I do not feel myself at liberty to do, we have no proof that the defendant claimed under a French grant.
Then it appears to me that I may adopt the language which the supreme court used, in giving their reasons for their judgment in this case. They say if the defendant he? ¿ad shown a mere claim of title, without "showing w}lat that title was, they would have presumed his title to , . * _ have been a lawful one; and the judgment would have .Q yg fayor_ jn my opinion, this is exactly what the defendant did do. He showed that he entered under Maekay but what Mackay’s title was, whether he claimed under a patent- from the proyince of Canada, from Great Britain, or from the provincial government of New York, there is not _a sentence yi the -finding of the jury which will warrant any conclusion or even presumption.
If a defendant of°tMe\na 20 years adverse court^wm tend the title to be lawful, unless the contrarybe^shown Mon.
To render the same judgment in this case as in the .ease of Jackson and Waters, I must say, with all "that respect due to *the -supreme court, and which I unfeignedly feel, is to give like decisions where the important facts are totally *608 different. It seemá to me, that if ever a possession ought to be supported, it should be in this case.
A father, fifty-two years before his title is questioned, takes possession of lands under a permission to settle himself Upon them, from a person who, he thought, had, and who, for all we know, may have had a right to grant the permission, with an implied promise that the lands, ‘or Other equivalent lands, should be conveyed to the occupants. After being in .possession eight years, he is driven firm his home by the ravages of war. At the end óf sév'en years, When peace is restored, he returns to the possession he had been obliged to forsake, and re-builds upon it a house, which he found had, in his absence, been destroyed. After this, he remains undisturbed thirty-six years, and then dies, transmitting his possession to his son and heir, who occupies the home his father had left him ten Or twelve years more, before his title is questioned. Then, at the end of fifty odd years, and after a descent had been Cast, come persons claiming under a title which commenced more than fifty years before they, or those under Whom they claim, make any legal assertion of their right. In the mean "time, they, that is, those who claim under the patent of 1769, knew of the possession of the ancestor of the defendant below, and of the defendant’s possession and ciaim. In 1798, that is, twenty years before the cause was tried, the father of the plaintiff in error forbid the "surveyors tinder Dean’s patent entering on the premises, --and the surveyors "passed round his lots. From that time, there was an acquiescence -in the claim of the defendant below; at léast there is nothing to the contrary found by the jury. In the mean time, the defendant has been spending his life and labor On the spot he inherited from his father.
Further facta
'Under these circumstances, I feel no reluctance in giving a judgment in favor, of the plaintiff in error. I cannot think the defendant will have-any reason to complain, if the law doés not give effect to :a title on which he has slept more than half a century. “ Vigilantíbus non dormientibus leges subserviunt” My "Opinion -is, that -the judgment be reversed.
*609 ^Spencer, Senator.
In this case it was not seriously questioned on the argument, that there was a sufficient ad u . , . ' ...„. verse possession shown m the p^amtm in error, La From* p0¡S) j¡0 q,ar the action, provided it was under a claim which might be a valid one; and we are, then, first to inquire wpat jn fact was the claim of the elder La Frombois ? 7 1 The special verdict says, that “ at the close of the war in the year 1784, he re-built .his house, and entered into the possession of the premises, claiming them as his own, until the time of his death, about twelve years since, and left the defendant in possession, who claimed as heir at law of his father, and continued in possession up to the com; mencément of the suit,” and in another part, that “he always claimed the land as his own under the writing” set forth. If anything in the law of ejectment is settled, it is, “ it has never been considered necessary, to constitute an adverse possession,, that there should be a rightful title, Whenever this defence is set up, the idea of right is ex-ciu^e(^- The fact of possession, and the quo ammo it was commenced and continued, are the • only tests.” I quote language of the supreme court continued in 9th John. 180, and repeated in 18th John. 44, and in 18th John. 355, where the defendant produced a paper as a deed, which could not operate as such, for the want of a seal. It was held, notwithstanding that his possession of twenty years under a claim of title was. adverse, that he was not bound to produce a deed, and that his claim of title was sufficient without proving it. So, in the case of Jackson v. Woodruff, (1 Cowen, 286,) the supreme court were with the defendant for. the land actually possessed, although the deed under which he claimed did not describe any lands. Woodworth, J., says, “If the title is.bad, it is of no moment; but if no lands are described, nothing can pass. The deed is a nullity, and never can lay the foundation of a good adverse possession beyond the actual improvement.” In the present case, the special verdict finds that La Frombois was in actual possession of the whole of the premises from 1784. Upon these authoriteis, I do not perceive why we are not bound entirely to disregard the *610 paper signed by Mackay, which was introduced by the defendant, and which *has given rise to the only question the cause upon which the supreme court decided. This possession, accompanied by claim of title, was good without the paper; and if that paper does not make it any better, it certainly does not make it any worse.
*609 The claim of the defendant below, and his father.
Mt^necessary to an adverse possession.
The only tests are the possesarrimo.11^
*610 The great and decisive distinction between this case and that referred to by the supreme court in 4 John. 182, is, that in that case, the defendants set up and relied upon a paper title under the French government in Canada, which he attempted to deduce down to himself, against the paper title of the plaintiff, and did not rely upon a possession with claim of title; and the court very properly say they cannot recognize any such title. But in the present case, the defendant relied on his possession, and did’not set up a paper title from the French government. There is, then, in truth, no conflict between the cases in 18th Johnson and 1st Cowen, and that in 4th Johnson. The former are decisions upon the effect of a possession; the latter upon the validity of a paper title. The former are strictly applicable to this case, and appear to me to dispose of it.
Another ground of distinction between this case and ° IT, 1^1 „ . that m 4th John, urged by the counsel for the plaintiff m error, is, that the production of the paper signed by kay was not a claim of title under the French government; and this seems to me to be well taken. There is certainly nothing on the face of the paper to show that Mackay’s ... title was derived from that government. If he did so derive title,-that fact should have been found by the special verdict, unless the evidence be so conclusive that there is no room for doubt that the jury must have found it so. But no such case is presented here; and the plaintiff, who seeks to avoid a title primos fade good, by some matter which entirely destroys it, is most clearly bound to establish that matter beyond controversy. Mo one will pretend that it has been done in this case; no one can say that the paper on the face of it, and that is the only evidence we have, shows whether Mackay derived under the English or the French government.The fact which was supposed by the *611 supreme court to constitute the analogy between *this .case and that-of Jackson v. Waters, in 12 Johnson, wholly fails.
*610 There is no proof that the claim of the the French government-
, special verdiet should evidenctf06' °r which proves siyeiy.
*611 The counsel for the defendant in error have urged that the entry of La Frombois originally, could-not Lave been under an adverse claim, because the title was in-the crown ®"reat Britain, against which 'the statute of limitations couldnot run, and that a possession must be ¡adverse in its commencement. The fallacy of this objection is, that at confounds a claim and a rightful title. The authorities .. , ....... . , , . before cited, show that it is wholly immaterial whether the claimed be rightful or not-; it is sufficient if there be ¡a 'claim of some title. If the objection w.as good in this case, hold equally against any-defence under an adverse possession, when the rightful title was shown to be in another. The very idea of an adverse -possession admits a "hostile rightful title. So, whether the rightful title was in crown-or In a subject, can maize no difference. If the J crown were to prosecute, then it might deny the application of the "Statute of limitations; ‘but It does not belong to a citizen to avail himself-of a prerogative not conferred on him. The statute operates on plaintiffs and their remedy, and has no connection with the merits ofthe defence. La Frombois’ possession was adverse to the whole world pan& although it would -not constitute a defence -against the crown, yet it does-against every body-else.
Though the government110 when the adsion8 beginsj yet the statute of limitations will run upon grantee ofthe gwemment.
the protected not against a prepossessio^for he cannot avail himself of the prerogative.
But the objection is unfounded in point of fact;-for it appears that the patent to Dean and -His associates was-on the 11th July, T769, and the first date given in -the special verdict respecting the possession -of La Frombois, is in 1776. When he entered, therefore, the • tithe was not in the grown of Great Britain.
There is still another view of this case. Admitting that Ba Frombois did not enter under color of title originally, yet we find him, in 1798, claiming the land asffiis-own, and 7 . forbidding and actually preventing the surveyor - under the lessors of the plaintiff bélow'írom cominguponthe premises, Here is a decisive act-of disseisin of the-patentees; an actual ouster and expulsion. (6 John, 217 ; 4 John. 411.) He remained in possession 20 years,' and died,"leaving‘his *612 heir at law in possession, who remained there, claiming as *such heir, twelve years before this suit was brought» In such a case, an action must be brought within a year and day after the death of the disseisor and the descent cast. Although this is not made a point precisely in this light, yet these facts are presented to us as evidence of an acquiescence by. the lessors of the plaintiff in the title of La Frombois. I do not think they establish such acquiescence ; but in my View, if it be admitted that La Frombois did not enter under a claim of title, but wrongfully, then there has been a disseisin and á descent cast, and the plaintiff is effectually barred On that ground. But if it be admitted that he did enter under a claim of titléj then his possession is advérse, and more than twenty years having elapsed, he cannot be-.disturbed by this action. Whichever ground is taken, the result is the same, and the plaintiff had no right to recover'.
*611 Though a posadverse ^aVits commencement, it become ¡30 by claim^of^'title amounting to ter.a°tUal 0Ua
*612 ^ beiowisbarred cast,
We have the authority of this court, in Palmer v. Lorillard, (16 John. 348,) for determining this cause on the last point stated, of a disseisin and descent cast; because it is an objection which goes to the foundation of the action, which the defendant cannot be presumed to have waived by his silence, and which the plaintiff could not have remedied by any evidence, for the proof is already before us in the special verdict, that the defendant was in undisturbed possession until the commencement of this suit, and the plaintiffs lessors, therefore, could not have commenced a suit within a year and a day after the descent cast. In my opinion, the judgment of the supreme court should be reversed.
Stebbins, Senator.
It is found, by the special verdict in this cause, that La Frombois the elder was in possession of the premises in question in 1776, and that he always claimed the ownership under the writing from Ma'ckay, set out in the verdict.
The facts,
At what time La Frombois entered is not found; but, except a few years during the war, he appears to have remained in possession from 1776 during his- life, and to *613 have transmitted that possession to his son, the present r plaintiff m erorr.
The defendant in error claims under Dean’s patent, issue(j by the colonial government in 1769. , In 1769, when the *premises were surveyed under Dean’s patent, La Frombois was in possession, asserting his claim of title, and forbade the surveyors entering upon his premises.
The supreme court, in Jackson v. Ingraham, (4 John. Rep. 182,) decide that a title to lands not derived from our own government, cannot be recognized as valid; and in Jackson v. Waters, (12 John. 365,) it is decided, that an entry, under color of such a title, does not constitute an adverse possession, as against a patent subsequently issued, for it appears in the last case, that La Frombois entered as early as 1768, and the patent issued in 1769.
Jackson v. Ingraham, (4 John. Rep. 182,) and Jackson v. Waters, (12 id. 365.)
The question in this case, I apprehend to be materially different from the one presented in Jackson v. Waters, inasmuch as it is not found in this cause that La Frombois was in possession at the time of issuing the patent; and therefore the doctrine that there can be no possession adverse to the people, is inapplicable.
Wherein this from Jackson v. Waters.
The cases abundantly prove, in the language of the supíeme court in this cause, “ that it is not necessary to constitute a good adverse possession, that it should have been commenced under a deed for the premises; and if the defeasant has a deed, he need not produce it; and further, if on production it proves to be defective, that does not afthe adverse character of the possession; and that the facfc 0f possession, and the quo animo it was commenced, , ’ „ , . „ are the only tests. And one reason or this doctrine of adverse possession is said to be, that the defendant is presumed to have entered, under a title which he had reason to believe, and did believe was a good title.
A deed not esstituto anCad" verse posses-
there be a notd’ be h'todueed.
proves to be defective, this does not presion beino^adverse.
Possession and quo animo are the tests.
Now quo animo did La Frombois enter in this case ? Did he not believe his title to be a good one ? Had he not reason to believe it good ? Perhaps a man better informed, would have had less confidence in such a title.; but I have no doubt he entered upon the premises, at that early day, in full confidence that he was acquiring a possession *614 and a title, which would descend as an inheritance to his posterity. He certainly defended it as such against the surveyors under Dean’s patent.
*613 Belief and reason to believe title good, admitted as proof of adverse possession.
*614 *But it is said that he was bound to know that a title derived from, the French government was invalid, and that it affords him, therefore, no color of title.
And this tho' the title be derived from a foreign government.
(Jackson v. Wafers, 12 John, 365,) contra.
The effect of this reasoning is, to place a person who enters under a claim of title which he may, in good faith, believe to be a good one, in a worse situation than one who enters under no title at all.
I apprehend a person entering under lands without any title, or under a defective title, is as much bound to know that, by the law of the land, he has no good title, as one who enters under a French grant; particularly when the latter enters (as La Frombois did in this case) before any adjudication against the" validity of such grants.
In my opinion, the judgment of the supreme court ought to be reversed.
Viele, Senator.
The only question which was sented by the argument in this case, is, whether the defendant in the court below had such possession of the premises sought to be recovered, as furnished a legal bar to the plaintiff’s right of action.
question,
By the special verdict it is found, that La Frombois, the father of the defendant, was in possession of the premises in 1776, when he was driven off, and his house burned by the British troops, in the ruthless progress of their invasion; after which he joined the American army, and returned at the close of the war in 1784, resumed the possession, claiming the land as his own, rebuilt his house, and continued that possession and claim until his death, about twelve years before the trial; that the defendant succeeded to his father’s possession and title, as heir at law, and so continued until the commencement of the suit in 1820; that La Frombois,, the elder, during his life, and the defendant after his death, had always claimed the land as their own, under one Mackay, an Englishman, who lived near Hew York, from whom the elder La Frombois had a writ *615 ing, permitting him to take two lots, dated in 1768; and that in 1798, when Dean’s patent, the source of title to the plaintiff, was surveyed, for the purpose of ^partition, the surveyor was forbid coming on to the premises by the elder La Frombois, and he consequently passed round his lot.
*614 The facts.
*615 hicts contained in this verdict, present to the consideration of the court a question of vast importance to the security of property, as well as the repose of society, upon which there has been some diversity of decision, and in relation to which so much of speculation has been indulSe<^ that it can hardly be considered as settled upon sound and distinct elementary principles. Indeed, so great is the obscurity in which the progress of judicial construction has involved the provisions, apparently simple, of the statute of limitations, emphatically and appropriately styled “ the statute of repose,” that were the statute itself erased from the books, it would be difficult or impossible to ascertain, with any degree of certainty, from the numerous decisions that have been made upon it, what had been its original provisions. It becomes the duty of this court, as one of dernier resort, and to whose decision, as such, the subject is now for the first time presented, to examine it with care, and endeavor to place it upon the basis of original legislative enactment. And as a frequent recurrence to first principles in any science, is the greatest safeguard against error, so will a judicious investigation of the policy and terms of the statute, tend to a correct determination of its applicability to the case under consideration. More than two centuries have elapsed since the enactment of the English statute of limitations, (21 James I. ch. 16,) and which has been adopted in this country, and was substantially re-enacted soon after the organization of our government. It was adopted in England after near a century of experience under a statute of Henry 8, of more than double the period, intended and calculated “ to impose diligence on, and vigilancy in him that was to bring his action and it has been sustained by the united concurrence and approbation of all succeeding legislators and jurists, *616 to the present time. Ho one who has reflected upon the subject, and whose observation and experience qualify him to judge, but will sanction and applaud the *wisdom and policy of a statute, the object and obvious tendency of which is, to promote the peace and good order of society by quieting possessions and estates, and avoiding litigation. But for the intervention of the statute, there would be no end to the revival of dormant and antiquated titles, and many an honest citizen who now, by its benignant operation, enjoys in security the few acres his industry has acquired, and which have been improved by Ms labor and enriched by “ the sweat of his brow,” would be driven from his home by an enemy, more insidious and more destructive to the peace of the community than an invading army.
*615 jectP»n°dyátate of the doctrine pos3easi<m^r3e and the stat-the right of tad- and 'the principle and stetutó.0 that
*616 Going upon the presumption that a valid claim will not he forborne for any great length of time, and that a possession and occupancy, bearing an aspect of right, will not be acquiesced in but for some availing reason, the legislature intended jp give a force and efficacy to such evidence of right, that should make it effectual to the protection of him who had the advantage of it; and for that purpose it was enacted, (1 R. L. 185,) “ that no person shall, at any time hereafter, make any entry into any manors, lands, tenements or hereditaments, but within twenty years next after Ms right or title descended or accrued to the same.”
1 Rev. Laws 185.
Such having been the evident policy, and such the plain words of the statute, it would seem, by its very terms, to impose upon the party seeking to recover, the necessity of showing affirmatively his title not only, but that the right to possession under that title has accrued within the time limited by the statute, and that it could therefore make no difference, however defective and groundless was the title or claim of title on the part of the possessor. This appears to me to be the plain and obvious import and effect of the statute; and it was once the established doctrine of the courts, that if there had been no possession in the lessor of the plaintiff or his ancestors for twenty years, the plaintiff would be non-suited, (Run. on Eject. 58, Esp. Ev. 195,196, Balantine on Limitations, 18, Burr. Rep. 119,) *617 unless he shows himself within some of the ^exceptions to the statute. And such was the language of lord Mansfield, in Taylor v. Atkins, decided in 1757. And it is for this reason, that the defendant is not bound to plead the. statute of limitations in ejectment, as he is in other actions. (Run. on Eject. 234.) Under this rule, the possession of the tenant is always considered the possession of the landlord; and payment of rent, or any distinct acknowledgment of title, is held to be sufficient evidence of tenancy; and wherever the premises are unoccupied or unimproved, as is frequently the case in this country, the title, by operation of law, draws to itself the only possession of which the subject matter is susceptible.
But it has been contended on the argument, and such is the uniform tenor of the decisions, that the possession of the defendant, in order to be available under the statute, must be adverse to the title of the' claimant; and this being conceded, leads to the important inquiry, as to what constitutes an adverse possession. It is a general rule, that every possession of land has the presumption of right in its favor, (10 John. 356,) and this, being a presumption of law, may be contradicted or destroyed by proof; but until it is destroyed, the possession is adverse to any other claimant. The presumption which the law thus raises in favor of the actual occupant, may be destroyed by proof of his having received a lease, or evidence of his having paid rent, or acknowledged the title set up; or it may be destroyed by showing that the occupant entered without pretending to any claim of right whatever; in which case the law adjudges the possession to be in subservience to the legal owner; (16 John. 301;) for he can derive no benefit from a legal presumption, who, by his own acts, shows that the presumption cannot apply ; the fact that no claim of right was made, showing that none existed. Hence, a claim of right is necessary, not because the statute requires it, but because the want of such claim is evidence sufficient to destroy the legal presumption óf right. The quo anima a possession is taken or held, furnishes the test of its character ; and the intention being to be inferred *from cir *618 cumstances, and being of the proper cognizance of the jury as a matter of fact, they will be warranted in inferring from the circumstances, that no claim of right was made, and that the party entered for the benefit of the true owner, whenever he shall choose to assert his title. Herein the principles applicable to a right of entry into land are analogous to those which are applied to actions upon contracts; and whoever supposed that it was necessary in the latter case, for the defendant to show himself to have been adverse to the payment of a promissory note, to which the policy of the statute had, in consequence of lapse of time, applied the presumption of payment ? But when the facts and circumstances will warrant the jury to infer an admission that the debt remains due and unpaid, it destroys the presumption of payment, which it was the policy of the statute to enforce, and leaves to the plaintiff a clear legal right to recover. Every possession, then, is adverse, and entitled to the peaceful and benignant operation and protecting safeguard of the statute, which is not in subservience to the title of another, either by a direct acknowledgment of some kind, or an open or tacit disavowal of right on the part of the occupant; and it is in the latter case only, that the law adjudges the possession of one to the benefit of another.
*617 What constitutes adverse possession; and how rebutted.
*618 According to these views of the subject, the possession of the elder La Frombois was hostile to the plaintiff’s title at its commencement, or from the moment the patent was issued to Dean; and also in 1769, if the possession had commenced as early as that. But it is not necessary that a possession should have an adverse character in its inception, if it acquire such character afterwards, and maintained it for a sufficient length of time to allow the statute to become a bar. And this character may attach without any new evidence of title, or the acquisition of any new title.
Of the possea. case. m
Thus it is well settled, that the possession of one tenant in common is the possession, or enures to the benefit of his co-tenant; and it is equally well settled, that such *possession, if sole, may become adverse to the co-tenant, merely by a public notorious act or claim. (5 Wheat. 124; 7 id. 120.) So it has been held, that a subsequent act may ex *619 plain a preceding entry; as where a parcener entered into possession "of the whole of a vacant possession, and made a feoffment in "fee, (Per Kent, Ch. J., 9 John, 182.) ¡No claim could be more public, or more hostile in its character, than was that of La Erombois in 1798; and it was so far acquiesced in at that time, that no entry was then made upon the premises for the purpose of surveying, nor has any entry since been attempted, notwithstanding this open and bold defiance, until the commencement of this action in 1820, a period of 22 years.
But the "supreme court in this case base their decision upon the authority of Jackson v. Waters, (12 John. 368,), where it is held, that “ the doctrine of that court in relation to adverse possession, is, that it is to be taken strictly, and is not to be made out by inference;” that “ every presumption is in, favor of a possession in subordination to the title of the true owner;” and that a title derived from a French grant, because it was not a valid. source of title, could not be the basis of an adverse possession.
It might, perhaps, be sufficient to deny the applicability of this case to the one under consideration; because it is not found affirmatively, or by inference in the special verdict, that the defendant’s title has its source in a grant of the French colonial government; but with all due deference to the intelligence and learning which adorned the bench of that court at the time that decision was pronounced, and no one feels a higher veneration for its character, or more proud of the lustre it has shed upon our history, than I do, I am constrained to the opinion, that the decision is not the true doctrine of that court, nor is it in accordance with the law of this land. In 10 John, 856, the court, per Kent, chief justice, maintain the doctrine, that a possession for twenty years, under pretense of right, ripens into a right, which will toll an entry; and that every possession has the presumption of right; in 9 John. 180, per Spencer, J,, that it has never been considered as necessary *to constitute an adverse possession, that there should be a rightful title, and that whenever this defence is set up, the idea of right is excluded. The same doctrine is held, per Woodworth, J., *620 in the same words, and sanctioned by the court, in 1 Cow-en, 285. And it is there also stated to be well settled, that a possession of twenty years under pretense of right will toll an entry.
*619 An adverse possession may be founded on the grant of a foreign government.
(Jackson v. Waters, 12 John. 368,) contra.
*620 And what is to this court of more binding authority, because derived from the source where the' power to direct what the law shall be, rests the policy and express terms, of the statute, protect every possession under pretence or claim of right, without the least regard to the validity of the source whence that claim is derived.
With a sincere desire to arrive at the truth in the investigation of this case, I am gratified in coming to the conclusion, thait law and equity combine with the best feelings of the heart, to protect, a possession, which appears to have been commenced in good faith, and has been adhered to under privations and sacrifices, with a zeal and "pertinacity that yielded only to a deeper devotion to the cause of our country in the hour of her peril, against a claim which, to say the least of it, has been culpably kept dormant, until it has become too antiquated to find favor at the hand of justice.
I am accordingly of opinion, that the judgment of the supreme court ought to be reversed; and that judgment ought to be rendered upon the special verdict for the defendant.
Jordan, Senator.
The lessors of the plaintiff below deduced a regular title under the letters patent to Dean and others; and are entitled to judgment, unless the defendant made out such an adverse possession as will constitute a bar to the action.
It appears to me unnecessary to agitate the question, whether possession taken under a French grant could or could not, under any circumstances, ripen into a perfect title by the lapse of years. My impression is it could not, provided, at the time, the premises were upon territory disputed *by the sovereigns of the two countries, or within the acknowledged limits of the British colonial government. Without this qualification, however, if the cause turned upon that point, I might entertain a different opinion. Mor *621 ^ necessary to consider whether there was evidence of such an actual disseisin, as would toll the right of 1 0 entry on the death of the ancestor. Upon that' point I should entertain serious doubts.
As a general rule, where possession is taken under color and continued for twenty years, it bars the action of ejectment; and it is immaterial how defective that title or whether the occupant makes color under a written or parol contract, or even any contract at all.
Possession for dery color 'of title though in titief ejectment.
The defendant having established, as I conceive, a prima facie title, by the length of his possession, it became necessary for the lessors of the plaintiff to show that the possess*on commence(i upon the basis of a title which the defendant was bound to know could not be asserted at law; and it is contended that the testimony introduced by the defendant himself, affords evidence of that fact; or, in other words, that his title set up was of French origin. I cannot so consider it; and in saying this, I intend to confine myself to the finding of the jury in this case, and not to go beyond it. Mackay, under whom the elder La Frombois claimed, was an Englishman, residing somewhere about Eew York. The writing, it'is true, such'as it was, from him to'La Frombois, was in the French language, and contained expressions peculiar to French titles; but Mackay’s title, or claim of title, was not shown; and to presume it of French origin, merely because of the language employed in drawing, or expressions introduced into the contract, would, in my judgment, far exceed the bounds of legal reason. It is a presumption which I should not be disposed to indulge in any case; and especially in a case like the present, where the party comes supported by a possession so ancient and meritorious, so unequivocal in its nature, and so long acquiesced in by the proprietors of *Dean’s patent. It is easy to account why the writing from Mackay to La Frombois was drawn üp in French, and executed in Montreal, consistently with a perfect available possession and claim on the part of La Frombois. The premises were at that time in a wilderness; the nearest place where the business of civilized man was carried on to any consider *622 a Die extent, was that where the writing bears date; the grantee, as the name would import, was a Frenchman, and probably a French conveyancer was employed to transact the business.
*621 There is no finding.or evidefendant be-m^eraErench grant.
*622 We find the memorandum drawn up by De Grlandons, the surveyor, in 1786, is also in French. This was many years after the treaty of Paris, after all claim of dominion by the French government in that quarter ceased, and several years subsequent to the American revolution; at a time, too, when he declares himself acting under a commission from the king of England, and the United States. If a presumption of French authority is derived from the use of the French language in the former case, why is it not so in the latter ? and yet in the latter case there is positive evidence to the contrary.
It appears to me the supreme court assumed a controlling and governing fact, in no way warranted by the ease, the absence of which distinguishes this from Jackson v. Waters, (12 John. 365;) and, therefore, that this case is not within the application of the rule of law there laid down, admitting it to be correct; and I am accordingly of opinion that the judgment ought to be reversed.
Per totam curiam,
Judgment reversed.

 How long soever the possession of parties, and their ancestors, .if it appear that they admit the want of an actual lease, and insist only that they were entitled to one which was to be in fee,' they cannot, after establishing such relation between them and the owner, set up a presumption of actual title, resting on adverse possession. Van Rensselaer v. Van Wie, 23 Wen. 531.
Where the owner of one bank of a river gives permission to the owner of the other side to abut his mill-dam against the bank of the former, the grantee of this privilege or any claiming title from him, cannot set up adverse possession against the grantor. Lace v. Caley, 24 Wen. 451.
A contract for the purchase of land after performance by the vendee of the terms of the contract and the accruing of a right to a deed, is sufficient color of title whereon to base the defence of adverse possession in an action by the vendor for the recovery of the premises. Briggs v. Prosser, 14 Wen. 227.
A possession of twenty-five years under such contract, after the accruing of the right to the deed, authorizes the presumption that the deed was executed. Ib.
A defendant who has entered into possession.of lands, claiming title by deed of an undivided sixth part of an extensive tract, cannot set up an adverse possession to more of the tract than he has under actual improvement or within a substantial enclosure. Sharp v. Brandon, 15 Wen. 697.
A deed fraudulently obtained is not available as the foundation of an adverse possession, so as to avoid a subsequent conveyance. Livingston v. Peru Iron Co., 9 Wen. 511.
So a deed is not available for such purpose executed by a person assuming to act as the attorney of the grantor, but without authority, when such want of authority is known to the grantee. Ib.
To constitute a possession adverse so as to bar a recovery, or to avoid a deed subsequently executed by the true owner, the party, in making his entry upon the land, must act Iona fide; he must rely on his title; he must believe the land to be his, and that he has title thereto, although his title may not be rightful or valid. Ib.
But if the title be an absolute nullity, it will not serve as the foundation of an adverse possession, lb.
Where lands have been held adversely for 20 years, and an entry is made by a party who has the true title, such party may be dispossessed by an ejectment brought by him who had held the premises adversely. Jackson v. Oltz, 8 Wen. 440.
Where a party was in possession of a lot of 600 acres, and appropriated *597-1 fifty acres thereof (to which 50 acres he had color of title, but the true title was’in another,) as a wood lot, refused on that account to sell the same, and dug'stone from a quarry thereon at" various intervals* during a period of 26 yeársj it was held, that' such possession should be deemed adverse against the true owner." Ib.
To constitute ah adverse possession, there must in all case's be'a claim of title; but it is not necessary that a deed should be shown as evidence of such title. Wherej however, there is no pápér title', there must be ajpedis posses• sib—an actual occupancy—a substantial enclosure. Ib.
Where a party claims to hold adversely a whole lot by proving actual occupancy of a part only, his claim must be under a deed or paper title; and where color of title is shown, occupancy of part for' 20 years is enough to entitle a party'to recover a'whole lot, unless the deed under which the claim is made" includes a tract greater than is necessary for the purpose of cultivation'or ordinary" occupancy. Ib.
In ejectment, where the defendant produces no written title, but relies solely oh pósséssioñ with an assertion of title, he can retain so much only as "be bas under actual improvement, and has been in "possession of for twenty years. Jackson v. Warford, 7 Wen. 62.
Where ¿"party has béeii in" possession of land for'thirty-five years," claiming it as his’own, and had built a barn upon it¡ and where'the owner, who resided within sixty" miles of the premises, instead of asserting "his claim, embarked in the service of the Northwest Company, in Canadá; for twenty years, and suffered eighteen years to elapse after his return before bringing suit, and the" original letters patent were found in the possession of the occupant of the premises; it was held, that the facts and circumstances were" such as would have1"warranted the presumption of a conveyance to the occupant." Ib.
A possession under a quit-claim deed obtained from a naked possessor without color or claim of titlé, and no valuable consideration paid, is hot such ah adverse possession as renders void a deed from the owner to a 5ova fide purchaser,' execdtód'duting "the" continuance of such possession. Jackson v. Hill, 5 Wen. 532.
If a party in possession of land to which he has title, offer to purchase from another" whb "claims the property, such offer does not impair or affect the right of him who made it, though it would bar a defence, on his part, of adverse possession'. Jackson v. Britton, 4 Wen. 507.
Where a" person eñtéred" into tbépdssessióh of land belonging"to his father-' in-law, who' promised to give"the land to him and his wife, and subsequently" by will devised the same to the wife, it was held, in an action of ejectment brought'by the heirs’of the "wife, that a possession of thirty-six years con *597-2 tinuance under a conveyance from the husband was not'adverse, and that a conveyance to the husband from the ancestor could not be presumed. Jackton v. French. 3 Wen. 337.
A claim under an executor’s contract to convey land, the consideration being'paid, and which a court of equity would therefore enforce, is'a sufficient claim under color of title. La Frombois v. Jackson ex dem. Smith, 8 Cow. 689; Clapp v. Bromagham, 9 Cow. 530.
(The case" of Jackson v. Johnson, 5 Cow. 74, overruled.)
But a person entering under a contract, is not'in a condition to hold adversely, until he have performed the condition necessary to entitle him to a deed. Jackson ex dem. Young v. Camp, 1 Cow. 605.
Though one enter* as'the committee'of a" lunatic, a subsequent sale to another by such committee, and" claim of title absolutely by the purchaser, changes the" character’of its" possession, and makes it adverse. Clapp v. Bromagham, 9 Cow. 530.
Though the possessor'claim under written evidence of title, and on producing that evidence it prove to be defective, yet the character" of his possession as’adversé, is n'ot affected by the defects of'his title! Ib.
If the entry is under color of title, the possession will be adverse, however groundless the' supposed title may be. La Frombois v. Jackson, 8 Cow. 689.
Entry atid possession under a deed granting' the possession and improvement of1 lands, With" words of inheritance, will be sufficient to constitute an adverse possession. Jackson ex dem Sitzer v. Waltermire, 7 Cow. 353.
To* constitute such' an adverse possession as will bar a right of entry, it must be accompanied with what the law will consider, prima facie, a good title! Jackson ex dem. Ten Eyck v. Frost, 5 Cow. 346.
Atf’entry"upon’ and possession of land upon the claim that it is a gore between two patents," will not constitute an adverse possession. Ib.
The declaration of a tenant is inadmissible to show" in what character he claims; as that he claims adversely. Ib.
The right of a tenant, or one claiming under him, to set up an adverse possession; does not depend upon the landlord’s right to receive rent,-,but-upon his power to enter. Failing v. Schenck, 3 Hill, 344.
Accordingly! where the defendant in ejectment set up an adverse possession in one who, as was shown, entered under the plaintiff’s ancestor by vir tue of "a lease for years, reserving an annual rent; held that the lease wat sufficient to repel the defence, though the circumstances were such as to warant the presumption of an extinguishment of the entire rent-shortly titer the term commenced. Ib.
"Wheré a grantee enters into possession of land -under-his deed, and after- *597-3 wards commissioners appointed by the court to make partition of the land convey it to a purchaser, the grantee’s possession becoming adverse, the deed of the commissioners is void, and the original grantee, not. being a party to the proceedings in partition, is not bound by them. Jackson ex dem. Smith v. Vrooman, 13 J. R. 488.
Possession of land by a purchaser under a deed for the entire lot, given without right in the grantor, is adverse in the rightful owners, though tenants in common with the grantor; .and a subsequent deed, executed by them during such adverse possession, is void; and subsequent releases by the other tenants in common to the grantor of the defendant, enure to the benefit of the defendant. Preston v. Smith, 13 J. R. 406.
Where A. entered into possession without title, and afterward T. covenanted to give him a deed. A, assigned the contract to S., who received a deed from T., and afterward a deed from B., the patentee. Held, that the original possession of A., being without title, was to be deemed the possession of B., and that the possession of S., under the covenant, was not adverse. Jackson ex dem. Sharp v. Bonnel, 9 J. R. 163.
A claim and color of title is necessary to constitute the possession adverse. Humbert v. Trinity Chwrch, 24 Wen. 587; Jackson en dem. Dunbar v. Todd, 2 Cai. R. 183; Jackson ex dem. Young v. Ellis, 13 J. R. 118; Smith ex dem. Teller v. Burtis, 9 J. R. 174; Jackson ex dem. Roosevelt v. Wheat, 18 J. R. 40; Jackson ex dem. Vanderlyn v. Newton, 18 J. R. 355; La Frombois v. Jackson ex dem. Smith, 8 Cow. 589; Jackson ex dem. Ten Eyck v. Frost, 6 Cow. 346.
But it is not necessary that it should be a legal and valid title. Jackson ex dem. Dunbar v. Todd, 2 Cai. R. 183; Jackson ex dem. Young v. Ellis, 13 J. R. 118; Jackson ex dem. Gilliland v. Woodruff, 1 Cow. 276; Jackson ex dem. Young v. Camp, 1 Cow. 605; La Frombois v. Jackson ex dem. Smith, 8 Cow. 589; Clapp v. Bromagham, 9 Cow. 530.
It is sufficient, if it destroy all presumption that the defendant is in possession under the plaintiff. Ib.
And it must be exclusive of any other right. Humbert v. Trinity Church, 24 Wen. 587; Smith ex dem. Teller v. Burtis, 9 J. R. 174; Jackson ex dem. Roosevelt v. Wheat, 18 J. R. 40; Jackson ex dem. Vanderlyn v. Newton, 18 J. R. 355.
And the defendants must uniformly, continuously and notoriously have been in possession adversely, for a period of twenty years before bill filed. Humbert v. Trinity Church, 24 Wen. 587.
One claiming under a deed from a judgment debtor, has not such an adverse possession as will avoid a conveyance executed, by a purchaser under an execution upon the judgment. Jackson v. Collins, 3 Cow. 89.
*597-4 A constructive adverse possession must be founded on a deed, or paper title, though such title need not be a rightful one. Simpson v. Downing, 23 Wen. 316; Jackson ex dem. Gilliland v. Woodruff, 1 Cow. 276; Jackson ex dem. Young v. Camp, 1 Cow. 605 ; La Frombois v. Jackson ex dem. Smith, 8 Cow. 589; Jackson ex dem. Putnam v. Bowen, 1 Cai. R. 358; Jackson ex dem. Bristol v. Elston, 12 J. R. 452; see also, Jackson ex dem. Ten Eyck v. Richards, 6 Cow, 617; Jackson ex dem. Hasbrouck v. Vermilyea, 6 Cow. 677 ; Jackson ex dem. Gee v. Oltz, 8 Wen. 440.
No deed or any equivalent muniment is necessary where the possession is indicated by actual occupation, and any other evidence of an adverse title exists. Humbert v. Trinity Church, 24 Wen. 587.
But whether possession with claim of title under a parol gift of land from the owner, will constitute an adverse possession? Jackson ex dem. Bradt v. Whitbeck, 6 Cow. 632.
Where a tenant from year to year, takes a lease from B., the act is void, and cannot work an adverse possession against A. Jackson ex dem. Williams v. Miller, 6 Cow. 751.
Nor will a conveyance by a tenant operate as the basis.of a possession adverse to the landlord. Jackson ex dem. Webber v. Harsen, 7 Cow. 323.
And it is immaterial whether the landlord know of such conveyance or not lb.
It is sufficient at the trial to show that the party took possession claiming under a deed, without producing his deed. Jackson ex dem. Roosevelt v. Wheat, 18 J. R. 40; Jackson ex dem. Vanderlyn v. Newton, 18 J. R. 355.
And if the deed be produced, and is found to be defective, it is still sufficient to support the adverse possession. Jackson ex dem. Vanderlyn v. Newton, 18 J. R. 355; Jackson ex dem. Krom v. Brink, 5 Cow. 483; La Frombois v. Jackson ex dem. Smith, 8 Cow. 589.
And if a party, supposing there was a defect in his deed, apply to others claiming under a subsequent deed to purchase, for the purpose of strengthening and quieting his own title, it is not an abandonment of his own titlq, nor acknowledgment of a superior title in another. Ib.
But repeated application by the person in possession to purchase the premises of the person holding the legal title, affords a presumption that he entered under the latter. Jackson ex dem. Russell v. Croy, 12 J. R. 427.
When a person in possession covenants with another, to pay him for the land and receive a deed from him, he cannot set up an outstanding title in another or in himself, without showing that he had been deceived or imposed upon, in making the agreement. Jackson ex dem. Brown v. Ayres, 14 J. R. 224.
Attornment by tenants to the person in possession without title, will not *597-5 make it an adverse possession. Jackson ex dem. Livingston v. Delancy, 13 J. R. 537.
A. entered into possession of land under a lease in fee, in 1116, and in 1118 gave the land to her son B. by parol, who entered into possession, and continued in possession, claiming under the lease until 1198, excepting the period of the revolution, and a year or two afterwards; and B. conveyed to C., and 0. to D., who conveyed to the defendant; held that it was a sufficient adverse possession to bar a suit commenced in 1801. Jackson ex dem. Colden v. Moore, 13 J. R. 513; New York Digest, pp. 31 to 35, inclusive, Nos. 1 to 51, inclusive.