THOMAS J. SMITH and Others, Respondents, *v.* WALTER P. SMITH and Others, Appellants.

Third Department, March 7, 1917.

Real property — action for determination of claim to — adverse possession — evidence — production of deed as evidence of title.

Where, in an action to compel the determination of a claim to real property, it appears that the defendants claimed title by a deed to their father from his brother, made in 1863; that at the time of the conveyance and ever since the grantor and his descendants have been in possession of the property, which was never delivered under the deed; that the grantee was well to do, but the grantor was poor and in financial difficulties, and that there is no explanation why possession was not given or why the deed was given, the production of the deed and its record are not much evidence of title, and the case under the circumstances invites the statute of repose, and, hence, a judgment in favor of the plaintiffs should be affirmed.

SEWELL and WOODWARD, JJ., dissented, with opinion.

APPEAL by the defendants, Walter P. Smith and others, from a judgment of the Supreme Court in favor of the plain-

tiffs, entered in the office of the clerk of the county of Warren on the 6th day of April, 1916, upon the decision of the court after a trial before the court without a jury.

*Chambers & Finn* [*Daniel J. Finn* of counsel], for the appellants.

*Jenkins & Barker* [*John H. Barker* of counsel], for the respondents.

KELLOGG, P. J.:

The defendants claim title to a great part of the premises in question by a deed to their father from his brother Richard in August, 1863. At the time of the conveyance, and ever since, Richard and his descendants have been in possession of the property, and possession was never delivered under the deed. Powell was well to do; Richard was poor and in financial difficulties. There is no explanation why possession was not given, or why the deed was given. The production of the deed and its record, under such circumstances, are not much evidence of title. Evidently there is something wanting, some fact which has been lost in the long lapse of time. The case, therefore, invites the statute of repose. Under all the circumstances we favor an affirmance of the judgment, with costs.

All concurred, except SEWELL, J., who dissented in an opinion, in which WOODWARD, J., concurred.

SEWELL, J. (dissenting):

I cannot agree with the learned trial court, that Richard P. Smith, Sr., the plaintiff's ancestor, had acquired title by adverse possession of the seven parcels of land described in the complaint, prior to his death in 1890.

There was absolutely no evidence as to the character of the original entry by him upon parcel 7 in 1855, or upon parcel 6 a year later. There was no evidence as to the nature of his claim when or after entering, except as it may be inferred from the occupation and use of the property, and his other subsequent acts.

The leading facts bearing upon the subject are as follows: Powell Smith and Richard Smith, Sr., were brothers. Powell

Third Department, March, 1917. [Vol. 177.

acquired title to parcel No. 7, known as the Hayes lot, in 1844, and to parcel No. 6 in 1856. Sometime during the year 1855 Richard and his family moved into a vacant house on the Hayes lot. At that time he owned parcel No. 2. In 1857 he purchased parcel No. 8, which bounded parcel No. 6 on the north and laid between it and parcel No. 2. In 1862 he purchased parcels 3, 4 and 5. The court found that all of these lots adjoined one another so as to form one continuous tract, and that Richard occupied and used them as a farm from the date of the respective deeds to him. On the 30th day of August, 1863, Richard and his wife executed a deed with covenants of warranty which purported to convey parcels 2, 3, 4, 5 and 8 to Powell. It was recorded December 3, 1863. The consideration expressed is $1,500. It appeared that Richard continued to occupy these lands as he had done, until the year 1878 or 1879, when his possession ceased.

For five or six years thereafter these parcels were occupied by his son, Richard P. Smith, Jr. He left them in 1884 or 1885. Richard testified that "we kind of vacated it when we moved away," but gave evidence tending to show that they were thereafter occupied by different parties under a lease or some other arrangement with him. No evidence was given tending to show that Richard or any of his tenants occupied or used these parcels, or any of them, under a conveyance, agreement or understanding with his father that had for its object a transfer of the title or possession. The evidence may be searched in vain for "a single lisp of acknowledgment" on the part of the son of the father's title or that he claimed to hold under him. He testified that he never paid a cent "to anybody for this land;" that he had no deed, and after his father had left the premises he leased, worked, improved and used them and received the avails thereof. Under the facts disclosed by the evidence in this case Richard, Jr., might have claimed title adverse to his father quite as effectively as his father could have claimed it against the true owner.

There can be no doubt as to the general doctrine that a claim of title may be made by acts alone; that "the actual possession and improvement of the premises, as owners are accus-

tomed to possess and improve their estate, without any payment of rent, or recognition of title in another, or disavowal of title in himself, will, in the absence of all other evidence, be sufficient to raise a presumption of his entry and holding as absolute owner; and unless rebutted by other evidence will establish the fact of a claim of title." (*La Frombois* v. *Jackson*, 8 Cow. 603.) The inference is permissible, in the case at bar, that Richard went into possession of parcels 6 and 7 under a lease or license or some other recognition of Powell's title, and that he occupied them thereafter as a tenant or as a gratuity. The parties were brothers. Powell was a man of means engaged in the lumbering business in another part of the State and was absent from home most of the time. The true title was vested in him which *prima facie* drew to it the right of possession. Richard claimed under no conveyance. He knew that Powell owned these lands and he had no right to occupy them except by virtue of a lease or license from him. It is to be presumed that he did not intend, without any title or right, to acquire by simple possession the title, and thus, without a shadow of right, deprive the owner of them.

I also think that the presumption, arising from the possession and acts of Richard, is repelled by the fact that he did not include parcels 6 and 7 in his deed to Powell, which, according to the evidence of the plaintiffs, were then surrounded by a substantial inclosure and being used and occupied by him with the other parcels as an entire farm; that it was a recognition of Powell's title and an admission that he was not in possession of these parcels under a claim of right.

It is fair to assume that he included in his deed all of the farm he supposed or claimed he then owned. Under these circumstances this deed was more than "a single lisp of acknowledgment" by Richard of Powell's title to these parcels, and that he claimed no title. According to the rule stated in the case of *Colvin* v. *Burnet* (17 Wend. 569) this was sufficient to fasten "a character upon his possession which makes it unavailable for ages."

I am satisfied that any benefit to Richard from a claim of adverse possession, in respect to parcels 6 and 7, was lost by this deed. Be that as it may, it is clear that the evidence did

Third Department, March, 1917. [Vol. 177.

not warrant the conclusion that Richard P. Smith, Sr., had acquired title by adverse possession to all the parcels constituting the farm prior to his death. To make this finding as to parcels 2, 3, 4, 5 and 8, the land described in the deed from Richard to Powell, the trial court must have tacked the possession by Richard P. Smith, Jr., to the sixteen or seventeen years' possession of his father in order to complete the statutory period of adverse holding. The decisive objection to this is that without privity of title or possession between these parties their possessions could not be tacked together to make adverse possession of sufficient duration. (*Smith* v. *Reich*, 80 Hun, 287; *Simpson* v. *Downing*, 23 Wend. 316; *Doe* v. *Campbell*, 10 Johns. 475.)

In *Simpson* v. *Downing* the court said (p. 320): "The rule, as laid down in the books, is that there must be an adverse possession by the defendant or by those under whom he holds, or both, for the term of limitation." It is a general rule that one cannot be said to hold an adverse possession under another in any case without privity either of contract, blood or estate.

It is quite plain, in view of the conceded facts, that the court in computing the period which would give title to the father by prescription was not authorized to count the time of the son's possession. If, however, we assume that there was such a privity between the father and son as to authorize the tacking of their possessions, it may well be doubted if the occupation of the father, after the deed to Powell in 1863, can be held to have been in hostility to the title so conveyed, no matter how exclusive the occupation of these parcels may have been. It is undoubtedly true that a grantor with warranty may originate a possession adverse to his grantee, but to do so effectively it is well settled he must disclaim the title of his grantee and bring that fact to his notice. No such case is presented here. No one pretends that there was a disclaimer on the part of the grantor, that he by word of mouth claimed title in himself or questioned the title of his grantee. If Richard intended to base a claim in hostility to his deed, the circumstances required him to make it known to his grantee. In the absence of such knowledge or of some change in the character of the possession, Powell had the right to assume that these parcels were

being occupied under his deed and in subordination to his title.

It seems clear that the possession of Richard was not hostile in its inception, that it began with a recognition of his grantee's title. If the occupation did begin with a recognition of his grantee's title it must be presumed to have been subservient, and that he intended to hold honestly and not tortiously, and in order to prove adverse possession, it was incumbent upon the plaintiffs to show that the occupation of Richard did not continue in subordination to the grant he had made. It thus follows that to establish a claim to the parcels described in the deed of August 30, 1863, the plaintiffs are bound to rely upon a theory, which was not adopted upon the trial by their counsel or by the court, that the deed was not a valid and effective instrument or that there was a reconveyance of the property.

No evidence was given, or probably could be given, as the grantor and grantee were dead before the trial, showing what actually did transpire when the deed was executed, but sufficient appears, in the absence of any evidence to the contrary, to show that the deed was delivered and accepted, and that both parties regarded it as an appropriate instrument for the conveyance of the property.

When a deed appears upon the record the recording is regarded as *prima facie* evidence of delivery. The subscribing and sealing of a deed, accompanied with the ordinary acknowlment of those acts, the fact that the grantor was deprived of the possession and control of the deed, that it was and remained in the exclusive possession of the grantee for several years before his death without any apparent objection on the part of the grantor, and that it was discovered among his papers after his death are also a reason for supposing it was delivered. The defendants are not, however, compelled to rely solely upon these presumptions. The testimony of the plaintiffs as well as the defendants establish the fact of a delivery. Richard P. Smith, Jr., one of the plaintiffs, testified that he knew that his father had given a deed to his brother Powell; that he knew it from the talk in the family; that he heard it talked by all the family; that he heard it talked more than once, since his father's death and before he died; that it was

known and understood that they did not have any deed to the place.

Orville C. Smith, another plaintiff, testified that he knew in 1874 that his father had made a deed to his brother Powell, and he supposed it was delivered. Walter P. Smith, a son of Powell, and one of the defendants, testified that during his father's lifetime he saw this deed in his possession, and after his father's death it came into his possession as administrator of his estate; that it was left with his attorneys at Port Henry; that he had been there to get it and the attorneys said they had changed offices two or three times and could not find it but thought it was there packed away in the basement.

Charles Smith, another defendant, testified that he was with his father when he died at Ticonderoga in 1881; that he had his papers with him at that time and he saw the deed among them; that he took possession of it and after Walter was appointed administrator he delivered it to him. To my mind the inevitable conclusion from these conceded and undisputed facts is that the deed was delivered and was intended to operate as a conveyance of the property described therein.

I am unable to concur in the view which sees in the mere occupation and use of these lands sufficient proof to justify a finding that there was a conveyance by Powell to Richard of parcels 6 and 7, and a reconveyance by him to Richard of the other parcels, notwithstanding the testimony of one of the plaintiffs that he knew his father had no deed whatever to the property, had heard him say so, and that he knew his father could not sell the place because he had no title.

I know of no principle, and none has been suggested to us, which permits the ignoring of a deed or the presumption of a reconveyance where all the circumstances, except the continued unexplained possession of the property by the grantor, affirms the presumption of a grant. The rule is that a plaintiff who seeks to avoid a title *prima facie* good, by some matter which entirely destroys it, is most clearly bound to establish that matter beyond controversy. (*La Frombois* v. *Jackson, supra.*) No one can pretend that it has been done in this case.

My conclusion, therefore, is that there is no satisfactory reason for the claim or the finding that Richard P. Smith, Sr.,

acquired title to these lots by adverse possession, or was the owner in fee at the time of his death.

The judgment appealed from is erroneous and should be reversed, with costs to the appellants to abide the event.

WOODWARD, J., concurred.

Judgment affirmed, with costs.